IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BARNETT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TYLER J. BARNETT, APPELLANT.

Filed March 28, 2017.    No. A-16-679.

Appeal from the District Court for Lancaster County, SUSAN I. STRONG, Judge, on appeal thereto from the County Court for Lancaster County, TIMOTHY C. PHILLIPS, Judge. Judgment of District Court affirmed.

Matthew K. Kosmicki, of Brennan & Nielsen Law Offices, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

I. INTRODUCTION

Tyler J. Barnett appeals an order of the district court which affirmed the decision of the county court finding him guilty of driving under the influence, leaving the scene of a property damage accident, and reckless driving following a bench trial. On appeal, Barnett argues that the district court erred in affirming the county court conviction based upon receiving improper evidence, testimony, and improper application of the law. For the reasons set forth below, we affirm.

## II. BACKGROUND

On December 12, 2014, the State filed a complaint charging Barnett with driving under the influence, one prior conviction, a Class W misdemeanor pursuant to Neb. Rev. Stat. § 60-6,196 (Reissue 2010), leaving the scene of an accident, a Class II misdemeanor pursuant to Neb. Rev. Stat. § 60-696(1) (Reissue 2010), and reckless driving, a Class III misdemeanor pursuant to Neb. Rev. Stat. § 60-6,213 (Reissue 2010). The charges stem from an incident which occurred during the early morning hours of November 9, 2014. Evidence adduced at trial revealed that Barnett had rented a "party bus" for his 25th birthday to transport himself and 15 to 20 of his friends to various drinking establishments around Roca, Nebraska. Andrea Norris attended this party and became extremely inebriated by the time the event ended. At around 2 a.m. on November 9th, Andrea was dropped off alone in Roca, Nebraska. Andrea did not recall much about the events of the evening due to her state of inebriation, but testified at trial that her phone showed a record of her sending text messages requesting help from Barnett and her mother, Cynthia Norris, between 2:27 and 2:51 a.m. A contact under the name of Tyler Barnett sent a reply around 2:30 a.m. stating "K I'll get . . . [y]a." Andrea testified that she had previously communicated with Barnett through this phone number and that she had saved Barnett's phone number in her phone contacts. Although Andrea could not remember sending or receiving any text messages, she testified that the text messages were fair and accurate depictions of what was on her phone the morning of November 9, when photographed by Sergeant Amy Merritt of the Lancaster County Sheriff's Department. Andrea also testified that she spoke on the phone with her mother at some point while she was alone in Roca that morning.

While Andrea was waiting for help to arrive, she let herself into an unlocked business to use the restroom. Around 3 or 3:30 a.m., Barnett arrived in the building. Andrea did not witness Barnett arrive at the location, but she spoke with him very briefly, until her parents arrived about one minute later. Barnett hid in a back room of the building because he did not want to speak with her parents.

At this point in the morning, Andrea's parents, Timothy and Cynthia Norris, arrived at the business in Roca in order to take Andrea home. Cynthia observed a vehicle parked in front of the business with broken windows and no passenger-side tires. Timothy noticed the same vehicle and described it as "well-damaged" and believed it had been involved in some kind of accident. Timothy opined that the vehicle did not look to be drivable. Timothy testified that it was a cool November morning and that when he approached and touched the fender of the damaged vehicle, it was still warm. Timothy and Cynthia proceeded to enter the unlocked business, where they found Andrea. As the Norris's exited the building, Timothy asked Andrea about the damaged vehicle parked out front. Andrea stated that she had forgotten something inside the building. Timothy found this very odd and followed Andrea into the building where he encountered Barnett.

Timothy stated that Barnett had contusions, was bleeding, and looked "roughed up." Cynthia noticed a fresh scratch on Barnett's hand. Timothy testified that Barnett stated that he had rolled his vehicle and driven to the business. He then requested that Timothy help him move his vehicle to somewhere it would not be found. Barnett stated that he had been on a party bus with Andrea, but that his father had picked him up and taken him home. He later drove to pick Andrea

up from the building in Roca. Barnett refused to disclose the site of the accident, but did reveal that he had lost his cell phone. When Timothy refused to help Barnett move the vehicle, Barnett asked for a ride to another friend's house.

Timothy agreed to give Barnett a ride to his friend's house, however, Barnett was unable to remember where his friend lived. Barnett then mentioned another friend who might have been able to help. Timothy was aware of where that friend lived. When they arrived at the other friend's home, Barnett exited the vehicle to speak with the friend. Timothy called the sheriff's department and requested that they come to investigate the scene. Timothy transported Barnett back to the business in Roca. Barnett's friend accompanied them in a different vehicle. Sheriff's deputies arrived at the scene shortly after Timothy, Barnett, and his friend arrived back at the business in Roca. During the time Timothy was interacting with Barnett, Timothy observed Barnett to be intoxicated based on his combativeness, slurred speech, and impaired motor skills.

Deputy Casey Dahlke of the Lancaster County Sheriff's Department testified that he responded to assist in the investigation around 3:50 a.m. Deputy Dahlke observed gouge marks in the pavement that lined up with the passenger-side wheels of the vehicle parked in front of the business. Deputy Dahlke testified that the vehicle had obviously been involved in a rollover accident. Deputy Dahlke had a brief conversation with Barnett and testified that at a distance of 3 to 5 feet away he could smell the odor of alcohol on Barnett, that Barnett was unsteady on his feet, and that Barnett was slurring his speech.

After conferring with another deputy, Deputy Dahlke followed the gouge marks in the pavement and eventually found the scene of a recent accident where tire tracks led into the ditch on the side of the road and debris was strewn through a farm field. At the scene of the accident, Deputy Dahlke observed a license plate that was registered to Barnett's vehicle, an iPhone in a black case, a letter addressed to Barnett, and a pocket knife with the engraving "Tyler" on its side. Deputy Dahlke testified that based on his observations of the scene a vehicle spun counterclockwise on the pavement, lost control, and rolled over at least once, where it came to rest on its tires in the field. After coming to a rest, the vehicle left tire tracks driving out of the field and back onto the road. Deputy Dahlke also observed damage to a fence and fence posts on the property, but did not observe any note or identifying information at the scene. Janice Wittstruck, the owner of the property where the accident occurred, testified she did not receive any information from the person who caused the damage, that the fence was not damaged prior to the evening of November 8, and that the damage totaled $80 plus the labor cost of the cleanup.

Deputy Robert Soflin photographed the scene of the accident, the gouge marks on the pavement leading to the front of the business, and the vehicle in front of the business. Deputy Soflin came to the same conclusions as Deputy Dahlke about the events that transpired at the time of the accident. Deputy Soflin also testified that it was over three miles from the scene of the accident to the front of the business in Roca.

Deputy Kory Lehr was the first to respond on the scene after the report of the incident. Deputy Lehr observed the vehicle parked in front of the business. He opined that the damage was consistent with a rollover and that Barnett appeared to be impaired. Specifically, Deputy Lehr observed that Barnett had an odor of alcohol emanating from his person, had bloodshot, watery eyes, and slurred speech. Barnett stated to Deputy Lehr that he had consumed approximately ten

beers that night, the last beer having been consumed at 2 a.m. Barnett informed Deputy Lehr that he owned an iPhone in a black case, but had misplaced it that evening. He also stated that he had a pocket knife with his name engraved on the side on his person, which Deputy Lehr was unable to find. At the end of their conversation, Barnett refused to perform any field sobriety tests. Deputy Lehr testified that he never threatened or coerced Barnett.

Based upon his observations, Deputy Lehr arrested Barnett for operating a motor vehicle while under the influence of alcohol. Barnett completed a chemical breath test, which indicated that Barnett's breath contained .128 grams of alcohol per 210 liters of breath at 6:27 a.m. Deputy Lehr cited Barnett for driving under the influence and leaving the scene of a property damage accident. Barnett was later charged with an additional count of reckless driving.

After a bench trial, the county court found Barnett guilty of all three misdemeanor offenses. The county court sentenced Barnett to probation for 24 months, issued fines, and suspended Barnett's license. Barnett appealed his convictions to the district court, which affirmed the county court. Barnett now appeals from the order of the district court.

## III. ASSIGNMENTS OF ERROR

Restated and consolidated, Barnett assigns five errors on appeal. Barnett asserts that (1) the district court erred in affirming the county court's receipt of the text messages between Andrea and Barnett over evidentiary and constitutional objections; (2) the district court erred in affirming the county court's decision permitting Timothy to testify about the operability of Barnett's vehicle and Barnett's intoxication; (3) the district court erred in affirming the county court's decision to allow Timothy to testify about statements Barnett made to Timothy; (4) the district court erred in affirming the county court's incorrect application of the doctrine of corpus delicti; and (5) the district court erred in affirming the county court's finding Barnett guilty of all three counts when there was insufficient evidence to support the convictions.

## IV. STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Pester*, 294 Neb. 995, 1001, 885 N.W.2d 713, 718 (2016). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v.* Draper, 295 Neb. 88, 99, 886 N.W.2d 266, 274 (2016). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Johnson*, 290 Neb. 862, 878, 862 N.W.2d 771 (2015).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Gonzales*, 294 Neb. 627, 656, 884 N.W.2d 102, 123 (2016). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 656-57, 123.

## V. ANALYSIS

### 1. EVIDENTIARY RULINGS

Barnett argues that the district court erred in affirming the county court's receipt of the text messages between Andrea and Barnett because they lacked foundation, were hearsay, were not relevant, and violated Barnett's right to due process. Upon our review, we find that Barnett's assertions lack merit.

### (a) Foundation

Generally, the foundation for the admissibility of text messages has two components: (1) whether the text messages were accurately transcribed and (2) who actually sent the text messages. *State v. Henry*, 292 Neb. 834, 867, 875 N.W.2d 374, 399 (2016). The court further explained:

> [T]estimony concerning context or familiarity with the manner of communication of the purported sender is sufficient foundation for the identity of the sender of the message. Such testimony is typically in combination with testimony that the cell phone number belonged to or was regularly utilized by the alleged sender. The proponent of the text messages is not required to conclusively prove who authored the messages. The possibility of an alteration or misuse by another generally goes to weight, not admissibility.

*Id.* at 868, 400.

Barnett does not dispute that the first prong of *State v. Henry* was met, as the exhibits were photographs of text messages on Andrea's phone. Barnett argues that the second prong iterated in *State v. Henry* was not met because Andrea had no memory of the early morning of November 9 due to her extreme intoxication, thus she had no ability to identify who actually sent the text messages.

Evidence presented at trial demonstrated there was sufficient foundation to admit the text messages. Photographs of text messages sent and received by Andrea's phone demonstrated that she had texted her mother and Barnett for help. Barnett replied that he would come and pick up Andrea. Andrea testified that she had previously communicated with Barnett through this phone number and that she had saved Barnett's phone number in her phone contacts. Although Andrea could not remember sending or receiving any text messages, she testified that the text messages were fair and accurate depictions of what was on her phone the morning of November 9, when photographed by Sergeant Amy Merritt. Any issue as to authorship of the text messages goes to the weight of the evidence, not its admissibility. The totality of the circumstances surrounding the

text messages between Andrea and Barnett demonstrates the county court had sufficient foundation to admit the exhibits, and the district court did not err in affirming the county court.

### (b) Hearsay

Barnett argues that the text messages received into evidence were hearsay and did not meet any of the recognized hearsay exceptions.

Neb. Rev. Stat. § 27-801(3) (Reissue 2016) states "[h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. . . ." Apart from statements falling under the definitional exclusions and statutory exceptions, the admissibility of an out-of-court statement depends upon whether the statement is offered for one or more recognized nonhearsay purposes relevant to an issue in the case. *State v. McCave*, 282 Neb. 500, 531, 805 N.W.2d 290, 317 (2011). A statement is not hearsay if the proponent offers it to show its impact on the listener and the listener's knowledge, belief, response, or state of mind after hearing the statement is relevant to an issue in the case. *State v. Poe*, 292 Neb. 60, 65-66, 870 N.W.2d 779, 783 (2015). Additionally, the text messages sent by a defendant in a criminal matter are nonhearsay because they were statements made by a party opponent. See, Neb. Rev. Stat. § 27-801(4)(b)(i) (Reissue 2016); *State v. Henry*, *supra*.

The evidence presented at trial does not support Barnett's assertion that the text messages admitted into evidence were hearsay. Barnett's response to Andrea's text messages for help were relevant to issues at the heart of the case. The text message's effect on Barnett and whether he drove to Roca while intoxicated were offered and received for nonhearsay purposes. Additionally, based on the foundation laid for the text messages, the text messages from Barnett were statements made by Barnett, and thus nonhearsay.

### (c) Relevance

Next, Barnett argues that the text messages were not relevant and should not have been received into evidence.

Neb. Rev. Stat. § 27-401 (Reissue 2016) provides "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion. *State v. Glazebrook*, 282 Neb. 412, 433, 803 N.W.2d 767, 785 (2011).

The text messages were relevant to provide a reason for Barnett to drive to Roca. Additionally, the text messages provide a time frame for the incident. Because the text messages were relevant, the district court did not err in affirming the county court's receipt of the text messages.

### (d) Due Process and Confrontation

Finally, Barnett argues the receipt of the text messages into evidence violated his rights to Due Process and Confrontation under the United States and Nebraska Constitutions. Barnett argues that because Andrea could not remember the events of the early morning hours, he could not

effectively cross-examine her on the critical issues relating to the text messages. Upon our review, we find that Barnett's argument lacks merit.

The United States Supreme Court set forth the standard for analyzing a violation of the Confrontation Clause in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Supreme Court of Nebraska has recognized and applied the logic set forth in *Crawford* and its progeny on multiple occasions. See, *State v. Sorenson*, 283 Neb. 932, 814 N.W.2d 371 (2012); *State v. Britt*, 283 Neb. 600, 813 N.W.2d 434 (2012); *State v. Fischer*, 272 Neb. 963, 726 N.W.2d 176 (2007); *State v. Hembertt*, 269 Neb. 840, 696 N.W.2d 473 (2005); *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004). In *Crawford*, the Supreme Court explained that where "testimonial" statements are at issue, the Confrontation Clause demands that such out-of-court hearsay statements be admitted at trial only if the declarant is unavailable and there has been a prior opportunity for cross-examination. *Crawford v. Washington*, *supra*. "Under *Crawford*, testimony is typically a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *State v. Sorenson*, *supra* (citations omitted). The initial step in Confrontation Clause analysis is to determine whether the statements at issue are testimonial in nature. If the statements are nontestimonial, then no further Confrontation Clause analysis is required. *State v. Fischer*, *supra*.

The evidence presented at trial demonstrates that the text messages were nontestimonial in nature, and thus, not afforded the protections of the Confrontation Clause. The text messages do not contain material which was created to be used in a criminal prosecution, nor were they uttered under a solemn declaration or affirmation made for the purpose of establishing or proving some fact.

Upon our review of the record, we conclude that the district court did not err in affirming the county court's receipt of the text messages between Andrea and Barnett. The exhibits were admissible at trial.

2. LAY WITNESS OPINION TESTIMONY

Barnett asserts the district court erred in affirming the county court's decision to allow Timothy to testify about the operability of Barnett's vehicle and Barnett's intoxication. Upon our review, we find that Barnett's assertions lack merit.

Neb. Rev. Stat. § 27-701 (Reissue 2016), provides that if the witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. Generally, erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact. *State v. Williams*, 295 Neb. 575, 594, 889 N.W.2d 99, 116 (2017).

Assuming without deciding that it was error for the county court to permit Timothy to testify about the operability of Barnett's vehicle and whether Barnett appeared to be intoxicated, the error was harmless. Numerous other witnesses testified as to the condition of the vehicle when it was parked in front of the business that morning. Sheriff's deputies testified that the driver of the vehicle had lost control and been involved in a rollover accident. Sheriff's deputies also testified as to the items found at the scene connecting Barnett to the accident. They further testified

regarding the gouge marks in the pavement and shredded tires leading away from the accident scene. These observations led them to believe the vehicle had been operated that morning. Deputy Dahlke and Deputy Lehr both testified that they could smell the odor of alcohol emanating from Barnett, that he had slurred speech, and seemed unsteady on his feet.

Upon our review of the record, even if the district court erred in affirming the county court's decision to allow Timothy to testify about the operability of Barnett's vehicle and Barnett's intoxication, any error would be harmless given the other properly adduced testimony.

### 3. BARNETT'S STATEMENTS

Barnett asserts the district court erred in affirming the county court's decision to allow Timothy to testify about statements Barnett made to Timothy. Barnett's assertion that the county court erred in permitting Timothy to testify about statements that Barnett was involved in a rollover accident, is not supported by the evidence and lacks merit. Statements made by a criminal defendant are nonhearsay. See, Neb. Rev. Stat. § 27-801(4)(b)(i).

### 4. APPLICATION OF DOCTRINE OF CORPUS DELICTI

Barnett argues that the district court erred in affirming the county court's incorrect application of the doctrine of corpus delicti and the precedent established in *State v. Martin*, 18 Neb. App. 338, 782 N.W.2d 37 (2010). Barnett essentially argues that he cannot be convicted of a crime based solely on his own statements. Upon our review, we find that Barnett's arguments lack merit.

The rule is that a voluntary confession is insufficient, standing alone, to prove that a crime has been committed, but that it is competent evidence of that fact and may, with slight corroboration, establish the corpus delicti as well as the defendant's guilty participation. *State v. Scott*, 200 Neb. 265, 269, 263 N.W.2d 659, 662 (1978). Similarly, in *State v. Martin*, 18 Neb. App. 338, 782 N.W.2d 37 (2010), this court determined that there was insufficient evidence to establish that the defendant operated the vehicle while under the influence when the only evidence was defendant's admission that he had driven the vehicle.

This case is distinguishable from *State v. Martin* and has more than the "slight corroboration" called for under the doctrine of corpus delicti. In *State v. Martin*, no one saw the defendant driving the vehicle, there was no evidence of when the vehicle was last operated, no evidence to show that he was intoxicated while driving the vehicle, and no evidence of impairment level at the time defendant was operating the vehicle. *Id.* at 341, 782 N.W.2d at 40. Here, Barnett's actions fell perfectly in an established timeline. Barnett and Andrea exchanged text messages around 2:30 a.m. Barnett arrived in Roca, alone and with his vehicle parked outside, between 3 to 3:30 a.m. Barnett's vehicle showed significant damage consistent with a rollover accident. Gouge marks were left in the pavement leading to the location where the vehicle was parked in Roca. At the site of the accident a deputy found Barnett's iPhone, license plate, a letter addressed to Barnett, and a knife with "Tyler" engraved on the side.

All of this evidence, in addition to the competent evidence of Barnett's admissions, establish the corpus delicti of the crimes, making the case distinguishable from *State v. Martin*. Barnett's arguments to the contrary are not supported by the evidence and lack merit.

### 5. SUFFICIENCY OF EVIDENCE

Barnett asserts the district court erred in affirming the county court's finding Barnett guilty of all three counts when there was insufficient evidence to support the convictions. Upon our review, we find that Barnett's argument lacks merit.

The standard of review requires us to consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *State v. Gonzales*, 294 Neb. 627, 656-57, 884 N.W.2d 102, 123 (2016). For all the reasons stated above, we conclude there was sufficient evidence for the district court to affirm the county court's findings of guilt on all three counts.

## VI. CONCLUSION

We conclude that the district court did not err in affirming the county court's receipt of the text messages between Andrea and Barnett over evidentiary and constitutional objections. We conclude that even if the district court erred in affirming the county court's decision to allow Timothy to testify about the operability of Barnett's vehicle and Barnett's intoxication, any error would be harmless given the other properly adduced testimony. We conclude the district court did not err in affirming the county court's decision to permit Timothy to testify about statements Barnett made to Timothy. Additionally, we conclude the district court did not err in affirming the county court's application of the doctrine of corpus delicti. Finally, we conclude the district court did not err in affirming the county court's finding Barnett guilty of all three counts based on the sufficiency of the evidence.

AFFIRMED.