Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/14/2016 09:09 AM CDT

State of Nebraska, appellee, v.
Richard Pester, appellant.
___ N.W.2d ___

Filed October 14, 2016.    No. S-15-530.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal
   case from the county court, the district court acts as an intermediate
   court of appeals, and its review is limited to an examination of the
   record for error or abuse of discretion.
2. **Courts: Judgments: Appeal and Error.** Both the district court and a
   higher appellate court generally review appeals from the county court
   for error appearing on the record. When reviewing a judgment for
   errors appearing on the record, an appellate court's inquiry is whether
   the decision conforms to the law, is supported by competent evidence,
   and is neither arbitrary, capricious, nor unreasonable. But an appel-
   late court independently reviews questions of law in appeals from the
   county court.
3. **Judgments: Pleadings: Appeal and Error.** Regarding questions of
   law presented by a motion to quash, an appellate court is obligated to
   reach a conclusion independent of the determinations reached by the
   trial court.
4. **Constitutional Law: Search and Seizure: Motions to Suppress:
   Appeal and Error.** In reviewing a trial court's ruling on a motion to
   suppress based on a claimed violation of the Fourth Amendment, an
   appellate court applies a two-part standard of review. Regarding histori-
   cal facts, an appellate court reviews the trial court's findings for clear
   error, but whether those facts trigger or violate Fourth Amendment pro-
   tection is a question of law that an appellate court reviews independently
   of the trial court's determination.
5. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal
   conviction for a sufficiency of the evidence claim, whether the evidence
   is direct, circumstantial, or a combination thereof, the standard is the
   same: An appellate court does not resolve conflicts in the evidence, pass

on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

6. **Constitutional Law: Search and Seizure: Warrantless Searches: Blood, Breath, and Urine Tests: Arrests.** A warrantless breath test administered as a search incident to a lawful arrest for driving under the influence does not violate the Fourth Amendment's prohibition against unreasonable searches and seizures.

7. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the state.

8. **Arrests: Search and Seizure: Probable Cause.** An arrest constitutes a seizure that must be justified by probable cause to believe that a suspect has committed or is committing a crime.

9. **Probable Cause: Words and Phrases.** Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances.

10. **Probable Cause: Appeal and Error.** An appellate court determines whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances.

11. **Criminal Law: Motor Vehicles: Words and Phrases.** Under Neb. Rev. Stat. § 60-6,196 (Reissue 2010), being in "actual physical control" is distinct from "operating" a motor vehicle and is interpreted broadly to address the risk that a person not yet operating a motor vehicle might begin operating that vehicle with very little effort or delay.

Appeal from the District Court for Scotts Bluff County, Randall L. Lippstreu, Judge, on appeal thereto from the County Court for Scotts Bluff County, James M. Worden, Judge. Judgment of District Court affirmed.

Bell Island, of Island & Huff, P.C. L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Matthew A. Dodd, of Dodd Law Firm, P.C., and Bradley P. Roth, of McHenry Haszard Law, for amicus curiae National College of DUI Defense.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Richard Pester appeals the decision of the district court for Scotts Bluff County in which the court affirmed his convictions following a jury trial in Scotts Bluff County Court for driving under the influence (DUI) and refusal to submit to a chemical test, both second offenses. The county court had overruled Pester's motion to quash the charge of refusal to submit to a chemical test; Pester had argued that criminalizing refusal was a violation of the constitutional rights to be free of unreasonable searches and seizures. The county court had also overruled Pester's motion to suppress evidence obtained as a result of his arrest; Pester had argued that there was not probable cause to support his arrest. On appeal, Pester assigns error to the district court's affirmance of such rulings and to its conclusion that the evidence was sufficient to support his convictions. We affirm the district court's order.

## STATEMENT OF FACTS

Shortly after midnight on July 3, 2012, Scotts Bluff County Deputy Sheriff Kristopher Still found Pester slumped over the steering wheel of a vehicle parked in the lot of a farm implement dealership. The dealership was not open for business at the time. The lot of the dealership was bordered by three public highways, and there was no access to the lot other than by one of the three public highways. There were no gates or locks on the entrances, and the general public could drive onto the lot in order to enter the dealership building.

Still was driving past the back side of the business when he observed a quick flash of brake lights in the lot. Because of the time of night and the fact that the business was not open, Still pulled into the lot to check on the vehicle. Still

got out of his patrol car and walked up to the vehicle. As he approached the vehicle, Still observed a man, later identified as Pester, hunched over the steering wheel. When he got closer, Still observed a partially filled whiskey bottle and a partially filled beer can on the front passenger-side floorboard. He also observed that the keys were in the ignition, although the engine was not running.

Still knocked on the vehicle's window several times and announced his presence before Pester responded. Still asked him to roll down a window so that they could talk. Still saw Pester turn the key in the ignition and roll down a power window. When Pester opened the window, Still smelled a strong odor of alcohol coming from the vehicle; he also observed that Pester had bloodshot eyes and a flushed face and that he slurred his speech. In response to Still's questioning, Pester said that he had been drinking. He also said that he was not the owner of the property on which he was parked but that he was tired and had stopped there to sleep.

Still asked Pester to get out of the vehicle so that Still could administer field sobriety tests. After Pester got out of the vehicle, Still could smell an "[o]verwhelmingly strong" odor of alcohol on his breath. Pester initially refused to give a breath sample, but Still eventually was able to get Pester to perform a preliminary breath test, which showed a result of .126. After Pester failed field sobriety tests, Still arrested Pester for DUI.

Still transported Pester to the Scotts Bluff County correctional facility. Still began preparations to administer a postarrest chemical test of Pester's breath, and he read a postarrest chemical test advisement form to Pester. When Still asked Pester to sign the form, Pester told Still that he would not submit to the chemical test of his breath.

The State charged Pester in county court with DUI, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010), and refusal to submit to a chemical test, in violation of Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2014). Both were charged as second

offenses. Pester filed a motion to quash the charge of refusal to submit to a chemical test. Pester also filed a motion to suppress evidence obtained as a result of his arrest.

In the motion to quash, Pester asserted that the charge of refusal to submit to a chemical test pursuant to § 60-6,197 was "unconstitutional and in violation of the Fourth and Fourteenth Amendment[s] of the U.S. Constitution and [art. I,] § 7 of the Nebraska Constitution." After a hearing in which Pester argued, inter alia, that § 60-6,197, criminalizing refusal of a chemical test, violated his constitutional right to refuse consent to a search, the county court overruled Pester's motion to quash.

In the motion to suppress, Pester asserted that his arrest and search were not based on "reasonable and articulable suspicion that a crime had been committed or was about to be committed." Still testified at a hearing on the motion to suppress. At the end of the hearing, Pester's counsel stated that he did not take issue with the "stop or the initial contact" and that Still did not do anything improper by checking out the vehicle in the lot or the person sleeping inside the vehicle. Pester's counsel argued instead that "this rises to the level of an illegal arrest for DUI, an illegal investigation for DUI, and doesn't rise to the level of probable cause." He generally asserted that because the area where Pester was parked was "not open to public access," Pester could not have committed DUI, and that therefore it was improper for Still to arrest him for DUI and to require him to submit to a chemical test. In its order overruling Pester's motion to suppress, the county court stated that the State presented evidence that Pester "was in a parking lot open to public access . . . , he was in control of a motor vehicle, the officer noted multiple signs of alcohol consumption, and [Pester] failed field sobriety tests."

At the jury trial, the State presented evidence, including Still's testimony. After the State rested, Pester moved for a "directed verdict." He generally argued that the State failed to prove DUI, because it failed to present evidence that he

was on private property which was open to public access. The county court overruled Pester's motion. Pester presented evidence in his defense, including his own testimony to the general effect that he did not begin drinking until after he had parked his vehicle in the lot and that he did not drive the vehicle after he began drinking. On cross-examination, Pester admitted that he was drunk when Still found him, that he was sitting in the driver's seat with the keys in the ignition and was touching the steering wheel, and that he was sure that Still saw the brake lights on his vehicle illuminate when Still drove by the lot. After he rested his defense, Pester renewed his "motion for a directed verdict," and the court again overruled the motion.

The jury found Pester guilty of DUI and refusal to submit to a chemical test. After an enhancement hearing, the county court found that both convictions were second offenses, and it later sentenced Pester on both convictions.

Pester appealed his convictions and sentences to the district court. He assigned as error the county court's overruling of his motion to quash and his motion to suppress. He also asserted that there was insufficient evidence to support his convictions, that the county court improperly enhanced the refusal conviction, and that the county court imposed excessive sentences. The district court rejected Pester's arguments regarding the motion to quash, the motion to suppress, insufficiency of the evidence, and enhancement. With regard to sentencing, the district court concluded that the sentence for DUI, second offense, was not excessive; however, the district court noted that the State conceded that the county court improperly imposed a sentence for the refusal conviction as a Class I misdemeanor rather than as a Class W misdemeanor. The district court therefore affirmed both convictions, the enhancement of both counts, and the sentence for DUI, but it remanded the cause for resentencing on the refusal conviction.

Pester appeals the district court's order.

## ASSIGNMENTS OF ERROR

Pester claims, restated, that the district court erred when it (1) affirmed the order overruling his motion to quash the charge of refusal to submit to a chemical test, (2) affirmed the order overruling his motion to suppress, and (3) concluded that there was sufficient evidence to support his convictions. Pester does not assign error to the district court's conclusions regarding enhancement and sentencing.

## STANDARDS OF REVIEW

[1,2] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Kleckner*, 291 Neb. 539, 867 N.W.2d 273 (2015). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. But we independently review questions of law in appeals from the county court. See *id*.

[3] Regarding questions of law presented by a motion to quash, an appellate court is obligated to reach a conclusion independent of the determinations reached by the trial court. *State v. Gozzola*, 273 Neb. 309, 729 N.W.2d 87 (2007).

[4] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Milos, ante* p. 375, 882 N.W.2d 696 (2016).

[5] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Gonzales, ante* p. 627, 884 N.W.2d 102 (2016).

## ANALYSIS

*The District Court Did Not Err When It*
*Affirmed the Order of the County Court*
*Overruling Pester's Motion to Quash*
*Charge of Refusing to Submit to a*
*Chemical Test of His Breath.*

Pester first claims that the district court erred when it affirmed the county court's order overruling his motion to quash the charge of refusal to submit to a chemical test. Pester had argued that the charge of refusal to submit to a chemical test pursuant to § 60-6,197 was unconstitutional and in violation of his federal and state constitutional rights to be free of unreasonable searches and seizures. Because Pester was asked to give a breath sample, we conclude, based on the U.S. Supreme Court's recent decision regarding warrantless breath tests, that the county court did not err when it overruled Pester's motion to quash and that the district court did not err when it affirmed that order.

[6] As we noted in *State v. Cornwell, ante* p. 799, 884 N.W.2d 722 (2016), the U.S. Supreme Court recently held in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), that a warrantless breath test administered as a search incident to a lawful arrest for DUI does not violate the Fourth Amendment's prohibition against

unreasonable searches and seizures. The Court in *Birchfield* made a distinction between breath tests and blood tests and determined that breath tests do not implicate significant privacy concerns. The Court stated that because "the physical intrusion is negligible," "breath tests are capable of revealing only one bit of information, the amount of alcohol in the subject's breath," and that the giving of a breath sample is "not an experience that is likely to cause any great enhancement in the embarrassment that is inherent in any arrest." 136 S. Ct. at 2176-77. In the *Birchfield* opinion, the Court decided three cases, one of which involved a defendant who was criminally prosecuted pursuant to a statute similar to § 60-6,197 for refusing a warrantless breath test: *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015). With respect to the breath test case, the Court in *Birchfield* concluded that because the breath test was a permissible search incident to a lawful arrest for DUI, "the Fourth Amendment did not require officers to obtain a warrant prior to demanding the test, and [the defendant] had no right to refuse it." 136 S. Ct. at 2186.

In *Cornwell*, we rejected the defendant's facial challenge to § 60-6,197. Based on *Birchfield*, we determined that warrantless breath tests do not run afoul of the Fourth Amendment, and we further determined that warrantless breath tests do not run counter to Neb. Const. art. I, § 7, which we interpreted to offer no more protection than that offered by the U.S. Constitution. The defendant in *Cornwell* had been directed to take a breath test; accordingly, we in effect concluded that there was a set of circumstances as to which § 60-6,197 was not unconstitutional and that therefore the defendant's facial challenge failed.

Pester also made a challenge to the charge of refusal of a chemical test directed at § 60-6,197. Based on our holding in *Cornwell*, we conclude that Pester's challenge similarly fails. Because Pester had no constitutional right to refuse the breath test, § 60-6,197 is not unconstitutional as to breath tests and it was not improper for the State to prosecute him for refusing

the breath test pursuant to § 60-6,197. For completeness, we note that both this case and *Cornwell* involved refusal of breath tests, and therefore we are not required to consider the validity of § 60-6,197 as it pertains to refusal of a blood test. Because Pester's constitutional challenge to § 60-6,197 and the corresponding charge of refusal of a chemical test of his breath is without merit, we conclude that the county court did not err when it overruled Pester's motion to quash and that the district court did not err when it affirmed the county court's order.

*The District Court Did Not Err When It*
*Affirmed the Order of the County Court*
*Overruling Pester's Motion to*
*Suppress Evidence Obtained*
*as Result of Arrest.*

Following the Court's filing of *Birchfield*, we ordered additional briefing regarding the application of *Birchfield* to the present case. In *Birchfield*, the Court specified that a warrantless breath test may be administered as a search incident to a *lawful* arrest for DUI. In his supplemental brief, Pester generally argues that it was improper to criminalize his refusal of the breath test, because he was not driving on a public highway, his arrest was not lawful, and therefore he was not required to submit to the test. Pester's new arguments, although ostensibly directed to the motion to quash, are aimed at whether his arrest was lawful and are better considered with respect to Pester's claim regarding the motion to suppress.

Pester claims that the district court erred when it affirmed the county court's order overruling his motion to suppress evidence obtained as a result of his arrest for DUI. In the lower courts, Pester had argued that Still lacked probable cause to arrest him for DUI and to require him to give a breath sample in connection with that arrest. As explained below, because there was probable cause for Pester's arrest for DUI, we conclude that the county court did not err when it overruled

Pester's motion to suppress and that the district court did not err when it affirmed that order.

[7-10] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the state. *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014). An arrest constitutes a seizure that must be justified by probable cause to believe that a suspect has committed or is committing a crime. *Id*. Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances. *Id*. We determine whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances. *Id*.

Pursuant to § 60-6,196(1)(a), it is unlawful "to operate or be in the actual physical control of any motor vehicle . . . [w]hile under the influence of alcoholic liquor or of any drug." In addition, Neb. Rev. Stat. § 60-6,108(1) (Reissue 2010) provides that § 60-6,196 "shall apply upon highways and anywhere throughout the state except private property which is not open to public access." Although Pester does not dispute that Still had probable cause to think that he was "under the influence of alcoholic liquor," as we understand it, he contends that he was not operating a motor vehicle and that, in any event, he was on private property, and therefore abiding by the law.

[11] To the extent that Pester contends that he was not "operating or in actual physical control of a motor vehicle," we note that being in "actual physical control" is distinct from "operating" a motor vehicle and is interpreted broadly "to address the risk that a person not yet operating a motor vehicle might begin operating that vehicle with very little effort or delay." *State v. Rask, ante* p. 612, 623, 883 N.W.2d 688, 697 (2016). In the present case, Still testified that he saw the brake lights of Pester's vehicle flash and that when he approached the vehicle, he saw Pester in the driver's seat with the keys in the ignition. Still further testified that when he asked Pester

to roll down the window, Pester turned the key in the ignition and rolled down a power window. These observations gave Still probable cause to think that Pester could begin operating the vehicle with very little effort or delay and that therefore he was in actual physical control of the vehicle.

Pester's main argument is that he was on "private property which is not open to public access" and that therefore Still did not have probable cause to think that § 60-6,196 applied. He asserts that the portion of the parking lot upon which he was parked was the private property of the farm implement dealership, and he claims that it was not open to public access. He further indicates that he was parked where customers of the dealership would not normally park and that the dealership was not open for business at the time Still found him. Pester directs our attention to the record wherein Still stated that part of the reason he investigated the presence of the vehicle in the lot at that time of night was to determine whether someone was trespassing. Pester argues that because he could not have been trespassing unless he was on private property, it is inconsistent to conclude both that a trespass may have occurred while also maintaining that Still had probable cause to think Pester was in a place with public access. We do not agree with Pester's contention.

With regard to whether private property is open to public access, in *State v. Prater*, 268 Neb. 655, 658, 686 N.W.2d 896, 898 (2004), when applying a city ordinance with language similar to § 60-6,108, we stated that "the phrase 'open to public access' means that the public has permission or the ability to enter." In *Prater*, we determined that an apartment complex's parking lot was open to public access because, even though a sign indicated that the lot was private, the lot was also used by maintenance workers and guests of residents. Similarly, in *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014), we found probable cause for an arrest when the defendant's vehicle was found parked on a paved area between the sidewalk and the street in front of an apartment complex, in part because the

arresting officer testified to his knowledge that both residents and nonresidents of the apartment complex used the area for parking.

In contrast to the foregoing cases, in *State v. McCave*, 282 Neb. 500, 516, 805 N.W.2d 290, 307 (2011), we determined that a residential driveway was not open to public access, because it was open only to those who had express or implied permission of the owner, members of the general public had no right or implied permission to use the driveway, and members of the general public did not have "the 'ability to enter' the driveway in the same sense that a member of the public might drive through or use a private parking lot by custom." We noted in *McCave* that the intent behind § 60-6,196 was "to prohibit intoxicated persons from operating or being in control of a vehicle even on private property if other motorists might access that property and be endangered by their conduct." 282 Neb. at 515, 805 N.W.2d at 307.

In the present case, Still testified that the lot where Pester parked was bordered by three public highways, that access to the lot was solely by one of three public highways, that there were no gates or locks on the entrances, and that the general public could drive onto the lot in order to enter the dealership. Despite Pester's argument that customers would not normally park in this location, Still's testimony shows that the general public was able to access the area; therefore, the area was "private property" "open to public access," § 60-6,108(1), and the concerns of § 60-6,196 were implicated.

With respect to the private character of the location where Still encountered Pester, as the foregoing analysis illustrates, the location can be both private property giving rise to trespass concerns and "private property . . . open to public access," § 60-6,108(1), giving rise to concerns about "preserving the safety of . . . public highways." *Mackey v. Montrym*, 443 U.S. 1, 17, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979). We find no inconsistency amongst Still's initial concern for the protection of private property against trespass, his welfare check of

Pester's vehicle curiously parked with a flash of brake lights in the middle of the night at a closed place of business, and his concern for the safety of other motorists. Therefore, a finding that Pester's vehicle was on private property with public access is not inconsistent with Still's justification for the initial investigation of Pester's vehicle.

We conclude that the county court did not err when it determined Still had probable cause to arrest Pester for DUI and when it therefore overruled Pester's motion to suppress and that the district court did not err when it affirmed the county court's order.

*The District Court Did Not Err When It Determined That the Evidence Was Sufficient to Support Pester's Convictions.*

Finally, Pester claims that the district court erred when it concluded that there was sufficient evidence to support his convictions. We conclude that the district court did not err in this regard.

Pester's argument that the evidence was not sufficient to support his convictions mirrors his argument with regard to the motion to suppress—that is, that the evidence did not support a finding that he was on private property with public access. As discussed above, Still's observations regarding the parking lot on which Pester was found support a finding that Pester was on private property with public access. Still's testimony regarding his observations also provided sufficient evidence for the jury to find that Pester was on private property with public access, that Pester operated or was in actual physical control of his vehicle, and that he was guilty of DUI and refusal to submit to a chemical test. Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found the essential elements of the crimes beyond a reasonable doubt. See *State v. Gonzales, ante* p. 627, 884 N.W.2d 102 (2016). We conclude therefore that the district

court did not err when it determined that there was sufficient evidence to support Pester's convictions.

## CONCLUSION

We conclude that the county court did not err when it overruled Pester's motion to quash and his motion to suppress and that therefore the district court did not err when it affirmed such rulings. We further conclude that the district court did not err when it determined that there was sufficient evidence to support Pester's convictions. We therefore affirm the district court's order in its entirety.

AFFIRMED.