IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CROFT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BARRY L. CROFT, APPELLANT.

Filed June 6, 2017.    No. A-16-770.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Travis L. Wampler for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

INBODY and ARTERBURN, Judges.

INBODY, Judge.

## INTRODUCTION

Barry L. Croft appeals from an order of the district court for Douglas County overruling his motion to suppress evidence and finding him guilty of two counts of possession of a controlled substance after a stipulated bench trial. On appeal, Croft argues the district court erred in overruling his motion to suppress because the search of his vehicle was done without a warrant and did not fit within the search incident to lawful arrest or any other recognized exceptions to the warrant requirement.

## STATEMENT OF FACTS

The State filed an information charging Croft with two counts of possession of a controlled substance. Croft filed a motion to suppress evidence obtained pursuant to the search of his vehicle,

alleging the search was done without a warrant and did not fit within the search incident to lawful arrest or any other recognized exceptions to the warrant requirement.

At the suppression hearing, there was testimony that on August 4, 2015, at around 8 a.m., the Ralston Police Department was dispatched, after receiving a report that Croft was in the parking lot of Ralston Junior High, armed with a gun. Sergeant Blair Bishop responded to the scene without knowing the description of Croft's vehicle and saw that there were about 100 vehicles in the Ralston Junior High parking lot because it was student registration day. Upon notifying the school's principal about the situation, Sergeant Bishop was informed by Deputy Chief Leonardo that Croft was driving a Tahoe. Sergeant Bishop left an officer at the front door of the school and proceeded to the school's parking lot to find the Tahoe. However, he could not find the vehicle and believed the reporting party may have been confused about the location of the vehicle. As a result, Sergeant Bishop went to various Ralston schools to find the vehicle, but was not able to find a vehicle matching the description.

Upon his return to Ralston Junior High to pick up the other officer, Sergeant Bishop was notified that Art Croft called 9-1-1, stating that Croft was in the driveway of Art's residence and was armed with a gun. When Sergeant Bishop arrived, he noticed a Tahoe matching the description provided earlier in Art's driveway and saw Croft sitting in the driver's seat. Sergeant Bishop activated his overhead lights, deployed his patrol rifle, and started giving loud verbal commands to Croft. Croft exited the vehicle, but began to reach back into the vehicle, causing Sergeant Bishop to give Croft more verbal commands. Croft started to walk towards Sergeant Bishop, but turned his back to Sergeant Bishop and reached towards his ankles. Sergeant Bishop continued to give Croft commands, and eventually Croft complied by stepping back to Sergeant Bishop and getting down onto the ground. Sergeant Bishop held Croft at gunpoint until Deputy Chief Leonardo arrived.

When Deputy Chief Leonardo arrived, he and Sergeant Bishop approached Croft and placed him in handcuffs. Another officer escorted Croft to a police cruiser, placing Croft in the backseat, where Croft did not have access to the interior of the Tahoe. While Croft was being taken into custody, he was incoherently rambling, making comments about conspiracy theories, and working undercover for the FBI. Deputy Chief Leonardo went to speak with Art to find out some more information, while Sergeant Bishop proceeded to search the Tahoe. Art told Deputy Chief Leonardo that Croft had taken two long guns from his home, and Deputy Chief Leonardo relayed this information to Sergeant Bishop.

Sergeant Bishop visually inspected the vehicle before entering, as the driver's side door was still open, but did not see anything from outside the vehicle. Sergeant Bishop then searched the driver's seat and noticed a long rifle case behind the driver's seat, partially covered by some clothes. Sergeant Bishop recovered the unlocked case, opened it, and saw a breech-action .12 gauge shotgun and at least one .12-gauge shotgun round.

Sergeant Bishop informed Deputy Chief Leonardo that he located the firearm, causing Deputy Chief Leonardo to begin a search of the backseat and passenger side. While Deputy Chief Leonardo searched the rear of the vehicle, he noticed a backpack. Deputy Chief Leonardo unzipped the backpack, opened it, and saw a plastic container. Deputy Chief Leonardo then opened the

plastic container, noticing Croft's identification, along with some pills and drug paraphernalia, including four different kinds of Schedule IV controlled substances.

At the hearing on the motion to suppress, Sergeant Bishop testified that he searched the vehicle because of the initial dispatch, the follow-up call from Art, the information that Croft was armed with a shotgun, and Sergeant Bishop's desire to secure the shotgun for safety. Sergeant Bishop testified that he continued to search the vehicle because Art advised that Croft had stolen two shotguns from him and that Sergeant Bishop had been trained that "if there's one weapon, there's two weapons. If there's two weapons, there's three weapons. So we continue to make sure there's no other weapons in the vehicle. So we'll search until the vehicle's been completely searched."

At the February 2016 suppression hearing, Sergeant Bishop admitted that he was unsure whether he was informed about there being two stolen shotguns before or during the search of the vehicle. Although both Sergeant Bishop and Deputy Chief Leonardo testified they were told a shotgun had been dropped off at Croft's mother's home, neither could recall whether they received this information before or after the search of the vehicle.

Moreover, at the suppression hearing, Deputy Chief Leonardo acknowledged that he found the backpack after Sergeant Bishop found the breech-action .12 gauge shotgun, but continued to search because he was looking for another weapon. Deputy Chief Leonardo also stated that because the two guns were long guns, they could not have been concealed in a backpack. Additionally, when the district court asked Deputy Chief Leonardo if he said he was looking for guns when he looked inside the backpack, Deputy Chief Leonardo responded, "Well, we don't know. I mean, obviously the dad said that he had taken two long guns," but informed the court he wanted to assure that the backpack did not contain a firearm as the initial call was an "armed disturbance, [and they didn't] know exactly how many guns, if [Croft] had any guns prior to that . . . that were still in the car that were in addition to the two shotguns that he - that he took."

In March 2016, the district court denied Croft's motion to suppress. The district court determined that officers were permitted to conduct a search of the vehicle, despite Croft being secured and away from the searched vehicle, because "it was reasonable to believe that the vehicle might contain evidence of the offense for which [Croft] had been arrested." The court noted that the search was allowed because "[t]he officers testified that [Croft] had been detained for an initial report of being involved in an armed disturbance, involving guns he had stolen from his father, and testified that they were searching [Croft's] car for guns that might be in the car." The district court determined the search would satisfy the preservation of evidence exception and that a warrantless search was justified under the circumstances.

Croft waived his right to a jury trial and in May 2016, the matter proceeded to a bench trial. The parties stipulated to the following facts, as set forth by the prosecutor:

> That on August 4th, 2015, officers of the Omaha Police Department had received 911 calls regarding an individual that seemed to appear to be distraught, claiming to be working with various law enforcement agencies, that was armed and had mentioned something about being at the Ralston middle school.
>
> Officers with the Ralston Police Department had -- went to check at the various schools in the area. While they were doing this they received another 911 call that indicated

that this individual, who by now is identified as . . . Croft, was at his father's house . . . and that he was in the park -- excuse me, the driveway and that he was still armed with some shotguns.

Officers responded to that location and eventually was able to secure . . . Croft. When the officers were doing a search--

. . . .

At the time the officers take . . . Croft into custody they did search his vehicle. While searching the vehicle, they did find a firearm. There was also a backpack located in the backseat of the vehicle, or at least in the vehicle. This backpack had a driver's license to . . . Croft. Also in the backpack were several prescription medications, including Clonazepam and Carisoprodol . . . . And these are both controlled substances under the State of Nebraska statutes.

In this midst of the stipulated facts, Croft again objected to anything found as a result of the search of the vehicle or of his person. The district court noted the objection and again overruled it. Croft was found guilty of the two counts of possession of a controlled substance and sentenced to probation for a term of 3 years.

## ASSIGNMENTS OF ERROR

On appeal, Croft's assignments of error, consolidated and restated, are that the district court erred in denying his motion to suppress evidence obtained during the search of his vehicle because the search was undertaken without a warrant and did not fit the exception to search incident to lawful arrest or any of the other recognized exceptions to the warrant requirement.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id*. When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress. *Id*.

The ultimate determination of probable cause to perform a warrantless search is reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *Id*.

## ANALYSIS

Croft contends the district court erred in denying his motion to suppress the evidence found as a result of the vehicle search. Specifically, Croft claims the district court mistakenly relied on an exception to the warrant requirement because he had not been lawfully arrested at the time the search took place, he was secured in a police cruiser and had no access to the vehicle's interior,

and there was no reason to believe that the offense of arrest would be found in the backpack located in his vehicle. Further, Croft argues that law enforcement went beyond the scope of the search incident to arrest by opening the backpack in the vehicle and that the search did not fit into any of the recognized exceptions to the warrant requirement.

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the state. *State v. Pester*, 294 Neb. 995, 885 N.W.2d 713 (2016). In other words, the essential criterion of the Fourth Amendment and article I, § 7, of the Nebraska Constitution is reasonableness. *State v. Rocha*, *supra*. Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions, including searches incident to a lawful arrest. *Id*. The State has the burden of showing the applicability of one or more of the exceptions to the warrant requirement. *State v. Perry*, 292 Neb. 708, 874 N.W.2d 36 (2016).

An arrest constitutes a seizure that must be justified by probable cause to believe that a suspect has committed or is committing a crime. *State v. Pester*, *supra*. Probable cause is a flexible, commonsense standard that depends on the circumstances' totality. *State v. Rocha*, *supra*. "Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Id*. at 755, 890 N.W.2d at 207. We determine whether probable cause exists under an objective standard of reasonableness, given the known facts and circumstances. *State v. Pester*, *supra*.

"Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or *it is reasonable to believe the vehicle contains evidence of the offense of arrest*." *Arizona v. Gant*, 556 U.S. 332, 351, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) (emphasis supplied). "[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. at 343 (internal quotations omitted). Whether the warrantless search of a vehicle is conducted incident to arrest, or is justified instead by probable cause, law enforcement may search all containers that might conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). That is to say, if there is probable cause to believe a vehicle contains evidence of criminal activity, law enforcement may lawfully search any area of the vehicle in which the evidence might be found. *Arizona v. Gant*, *supra*. Additionally, "[w]hen there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one." *Wyoming v. Houghton*, 526 U.S. 295, 302, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999).

In this instance, the record indicates that law enforcement received reports that Croft was at the Ralston Junior High School parking lot, armed with a gun. Nebraska State law provides that a person is not allowed to possess a firearm on school grounds. See Neb. Rev. Stat. § 28-1204.04(1) (Reissue 2016) ("Any person who possesses a firearm . . . on school grounds . . . is guilty of the offense of unlawful possession of a firearm at a school. Unlawful possession of a firearm at a school is a Class IV felony."). As law enforcement tried to find Croft, they received an updated report that Croft was parked in the driveway at his father's residence, armed with a gun. Specifically, in Sergeant Bishop's testimony, he indicated that when he was dispatched to the

school and to Art's home, he was told that Croft was "armed with a gun." The stipulated facts at the bench trial also provided that law enforcement received reports of an individual "that was armed" at the school and "that this individual, who by now is identified as . . . Croft . . . was still armed with some shotguns." Although the timeline is questionable on whether law enforcement was informed that Croft took two long guns from Art's home before or during the search of the vehicle, there was no indication that the reports of Croft being "armed with a gun" was specific to Croft's possession of Art's long guns. Although Deputy Chief Leonardo acknowledged that because the guns taken from Art were long guns they could not have been concealed in a backpack, he stated his desire to assure that the backpack did not contain a firearm since the initial call was an "armed disturbance" and that they did not know "exactly how many guns, if [Croft] had any guns prior to that . . . that were still in the car that were in addition to the two shotguns that he . . . took."

Based on our review of the record, it appears Croft was taken into custody based on the reports that he had been in possession of a firearm at a school. As such, it was reasonable for law enforcement to believe that Croft's vehicle contained evidence of the offense for which Croft, as a recent occupant of the vehicle, had been arrested. As it was reasonable for the law enforcement officer to believe the vehicle contained evidence related to the offense for which the arrest was made, the search of the vehicle, including containers or bags that might conceal the object of the search within it, and the seizure of the items found as a result of that search were reasonable. Moreover, because we ultimately conclude that the search of the vehicle, including the backpack located in the vehicle, was conducted pursuant to search incident to arrest, we need not consider any of the other exceptions.

## CONCLUSION

Having found no merit to Croft's assignments of error, we affirm the denial of Croft's motion to suppress and his conviction.

AFFIRMED.

MOORE, Chief Judge, participating on briefs.