IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


STATE V. FLETCHER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ROBERT D. FLETCHER, APPELLANT.


Filed January 30, 2018.    No. A-16-1042.


Appeal from the District Court for Cherry County, MARK D. KOZISEK, Judge, on appeal thereto from the County Court for Cherry County, ALAN L. BRODBECK, Judge. Judgment of District Court affirmed.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Robert D. Fletcher, pro se.


PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Robert D. Fletcher appeals an order of the district court for Cherry County which affirmed a county court jury verdict finding him guilty of third degree assault following trial. On appeal, Fletcher argues the district court erred in affirming various rulings by the county court before, during, and after trial. For the following reasons set forth below, we affirm.

## II. BACKGROUND

Fletcher was charged by complaint in the county court for Cherry County with assault in the third degree, a Class I misdemeanor, on August 22, 2014. A jury trial was held and the jury rendered a guilty verdict on July 21, 2015. We will set forth the factual basis presented at trial and the evidence adduced that is pertinent to the issues raised on appeal.

At the time of trial, Robert Joseph, the alleged victim, was the proprietor of a restaurant in Cherry County, Nebraska. Joseph was leaving his restaurant by vehicle on the night of August 8, 2014. He had agreed to help a relative bartend a large event at another establishment that evening. Joseph left his restaurant at approximately 10:20 p.m. In order to leave his restaurant and travel to his destination, Joseph had to enter a four-lane divided highway. Joseph turned right onto the highway, traveling west. He entered the northernmost lane, which was the furthest right-hand lane on the highway. At this point, Joseph noticed a fast moving vehicle in the southernmost lane of the westbound highway. He identified the vehicle as a black pickup truck. Joseph described the pickup as following him too closely. He testified that the pickup was following so closely that he could not see the headlights of the pickup behind him.

Shortly after entering the highway, Joseph arrived at the intersection he intended to turn towards his destination. He turned right at a traffic signal off of the highway onto a main thoroughfare in Valentine, Nebraska. Joseph testified that the black pickup caught up with his vehicle and was parallel with his vehicle on the street. He engaged the brakes in order to let the black pickup pass him, when the pickup suddenly entered his lane. Joseph's vehicle struck the rear of the black pickup. The vehicle came to a complete stop on the street.

Joseph began to exit his vehicle. According to Joseph, while he was in the process of exiting, Fletcher appeared at his driver's side door and struck Joseph twice in the face with his fist. Joseph moved towards the rear of his vehicle and attempted to call the police. However, his phone was connected to his vehicle, so he was unable to speak with the 911 operator on the phone until he realized it was connected to his vehicle. Joseph testified that Fletcher was yelling homophobic slurs at him and attempting to entice him into a fight. After Joseph finished the call to the 911 operator he informed Fletcher that he had called the police. Joseph then told Fletcher "I've called the cops. This thing is over. If it would make you feel better, you can hit me again." Fletcher then struck Joseph again. Joseph testified that he did not know Fletcher and that he had no history of incidents with Fletcher.

The State also called Officer Jamon Slama as a witness. Slama testified that he was dispatched to the incident between Joseph and Fletcher on August 8, 2014. Slama indicated that Joseph had a red, swollen cheek. He also detailed that Fletcher's pickup had damage on the rear passenger side bumper and Joseph's vehicle had damage to front driver's side bumper. Slama did not observe any injury to Fletcher. Slama photographed the scene and took a written statement from Joseph. Fletcher was interviewed by Slama but declined to provide a written statement.

Fletcher, acting as his own attorney, called four witnesses. He called his grandniece and his daughter. The girls were passengers in Fletcher's pickup when the incident occurred. Both girls were minors at the time of the incident. Their testimony was consistent with one another, and fairly consistent with Fletcher's own testimony. Fletcher also called his friend, Ron Monroe, who arrived after the incident had occurred. Finally, Fletcher testified in a narrative form as to how the events unfolded that evening.

Fletcher testified that he, his daughter, and grandniece were leaving a family friend's property in his black Dodge pickup the night of August 8, 2014. They had been riding Fletcher's horses which were kept on the property. As they were driving on the highway towards Fletcher's place of business, a white pickup truck entered the highway and cut Fletcher off. Fletcher testified he stated, "Okay, I'm not going to put up with that kind of nonsense, and I don't have to." He then

proceeded to follow the white pickup. The two vehicles reached a traffic signal where the white pickup turned right from the right-hand lane. Fletcher then turned right from the left-hand lane. Fletcher stated that he did not know who was driving the white pickup at the time, but, "I knew he was somebody I wanted to have a little chat with." Fletcher contemplated how he would be able to stop the white pickup. He testified that "[h]e would have to stop. And at that time, when he did stop, I'll guarantee, I'm going to get him out of that pickup one way or another." Fletcher attempted to pull in front of the white vehicle and then engage his brakes. At this point, the white pickup collided with Fletcher's pickup.

Fletcher began to exit his vehicle. He testified that when he exited the vehicle, he looked around because, "When you're getting out to knock someone on their butt, you always look around." Fletcher stated that the driver of the white pickup, who he now knows to be Joseph, started coming towards him. Joseph threw a punch at Fletcher, but missed. Joseph's fist caught a leather strap attached to Fletcher's front pocket and Fletcher's cellular phone. This resulted in Fletcher's front shirt pocket being ripped. Fletcher stated that he then struck Joseph, which knocked him down. Joseph got up from the ground and told Fletcher he was driving too fast past his business. Fletcher could not recall if Joseph attempted to strike him. Fletcher did strike Joseph a second time at that point. He stated that Joseph moved to the rear of Joseph's pickup and began to call 911. Fletcher could not recall if he struck Joseph a third time.

After deliberations, the jury returned a guilty verdict. Fletcher filed a motion for a new trial on July 31, 2015, which was overruled on December 4. Fletcher was represented by counsel on this motion only. Thereafter he resumed representing himself. Fletcher filed a "Motion to Set Aside Denial of New Trial" on December 7, which was overruled on February 4, 2016. Fletcher also made several oral motions during his sentencing hearing, which were overruled. He was sentenced to 24 days' jail time on February 4. Fletcher filed an additional motion for new trial on February 25. He filed his notice of appeal to the district court for Cherry County on March 3. The county court for Cherry County held a hearing on the second motion for new trial on March 10, but never ruled upon it. The district court held a hearing on Fletcher's appeal on July 15. The district court affirmed the jury verdict and the county court's pretrial and posttrial rulings on October 6. Fletcher filed the instant appeal on November 3.

### III. ASSIGMENTS OF ERROR

Restated and consolidated, Fletcher assigns the district court erred in affirming the county court in the following manner: (1) denying Fletcher's pretrial motion to dismiss based on speedy trial grounds; (2) allowing impermissible evidence to be given to the jury during deliberations; (3) failing to find that he received ineffective assistance of counsel on his first motion for a new trial; (4) finding the State had produced adequate discovery under the discovery order; (5) overruling his motion to continue trial; and (6) overruling his motions for a new trial.

In addition, Fletcher assigned, but did not argue the following assignments of error: (1) that the district court erred in affirming the county court's ruling to exclude hearsay evidence and (2) that the district court erred in affirming the county court's refusal to hold a witness in contempt of court for perjury. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). Therefore, we will not consider these assignments of error.

## IV. STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Pester*, 294 Neb. 995, 885 N.W.2d 713 (2016). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Draper, supra*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 771 (2015).

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Oliveira-Coutinho*, 291 Neb. 294, 865 N.W.2d 740 (2015).

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

## V. ANALYSIS

### 1. SPEEDY TRIAL

Fletcher argues the district court erred in affirming the county court's overruling of his motion to dismiss based on speedy trial grounds. Fletcher argues that the county court's ruling that the time for speedy trial was tolled due to an interlocutory appeal filed by Fletcher was improper.

Fletcher raised an oral motion to dismiss based on statutory speedy trial grounds immediately prior to the empanelment of the jury in his case. The county court overruled his motion on July 20, 2015, the day of trial. Fletcher did not appeal that ruling until March 3, 2016.

The Nebraska Supreme Court has held the speedy trial statutes confer a right to a speedy trial and authorize a special application to obtain judicial enforcement of that right. A ruling on a motion for absolute discharge based upon an accused criminal's nonfrivolous claim that his or her speedy trial rights were violated is a ruling affecting a substantial right made during a special proceeding and is therefore final and appealable. *Dugan v. State*, 297 Neb. 444, 900 N.W.2d 528 (2017). The reasoning is that a motion to discharge affects a substantial right, because the rights conferred on an accused criminal by Neb. Rev. Stat. §§ 29-1207 and 29-1208 (Reissue 2016) would be significantly undermined if appellate review of nonfrivolous speedy trial claims were postponed until after conviction and sentence. *Dugan v. State, supra*. Proceedings for reversing, vacating, or modifying judgments or final orders shall be commenced within 30 days after the

rendition of the judgment or making of the final order complained of. Neb. Rev. Stat. § 25-1931 (Reissue 2016). It is worth noting that a pro se party is held to the same standards as one who is represented by counsel. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

The district court on appeal determined that it was without jurisdiction to consider the issue as Fletcher did not appeal the ruling within 30 days. We find the district court did not err in affirming the county court's ruling as Fletcher did not appeal the final order within the statutorily prescribed time.

In his assignments of error, Fletcher also alleges that his constitutional right to a speedy trial was violated. Unlike the statutory speedy trial right, Fletcher was not required to file an interlocutory appeal with respect to an alleged violation of his constitutional rights to a speedy trial. *State v. Johnson,* 22 Neb. App. 747, 860 N.W.2d 222 (2015). However, Fletcher has waived this right in multiple respects. In Fletcher's oral motion to dismiss, he only argued that a violation of his statutory speedy trial rights occurred. He did not argue that his constitutional rights were violated. Although the record indicates that a written motion existed, it was never made a part of the record that is before us. The county court ruled solely on the statutory speedy trial issue and based on our record was never presented with a constitutional claim.

We do note that Fletcher's first amended statement of errors on appeal to the district court did allege violation of his constitutional right to a speedy trial. However, during oral argument before the district court, Fletcher again only argued his statutory right to a speedy trial. The district court did not address the constitutional speedy trial factors in its opinion. We find that the district court was correct in not addressing the constitutional issue. An appellate court cannot consider on appeal issues not raised before the trial court. *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010).

Fletcher also assigns to us that his constitutional right to a speedy trial was violated. We cannot consider this issue for the same reason that the district court could not address it. No record exists indicating that the constitutional issue was ever raised in the county court. Moreover Fletcher merely restated this assignment of error in his brief without further argument. It is well-settled law that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). Therefore, we will not address Fletcher's constitutional right to a speedy trial as he failed to raise this right before the county court and before us and did not argue it in his brief.

## 2. EVIDENCE RECEIVED BY JURY

Fletcher argues the district court erred in finding the county court had not allowed Exhibit 1, the handwritten statement of James Thomas, to be given to the jury during deliberations. Fletcher argues that there was evidence the jury received and considered Exhibit 1 during its deliberations.

Exhibit 1 was the handwritten statement given to police by James Thomas, a witness to the incident, dated August 8, 2014. The district court determined that there was no evidence in the record that the jury received Exhibit 1 during deliberations. The district court noted that Fletcher did not raise this issue during his motion for new trial, filed on July 31, 2015, or the hearing on the motion on November 2. The only alleged evidence of this misconduct was received in a county court hearing held on March 10, 2016, after Fletcher had perfected his notice of appeal to the

district court. The district court found that it could not consider this evidence since the county court had no jurisdiction over the case at the time of hearing. We agree. We cannot consider any evidence adduced at the March 10 hearing as the county court was without jurisdiction to conduct this hearing given Fletcher's previously filed notice of appeal to the district court.

The record demonstrates that the State offered Exhibit 1 for purposes of a pretrial motion the day of trial. The county court received the exhibit for purposes of that motion only. Neither the State nor Fletcher reoffered Exhibit 1 during the trial itself. Therefore, on the record properly before us there is no evidence that Exhibit 1 went to the jury. We find the district court did not err in finding no error committed by the county court regarding Exhibit 1.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Fletcher argues that he received ineffective assistance of counsel for numerous reasons. Fletcher represented himself throughout the trial. The only proceeding in which Fletcher was represented by counsel was his first motion for a new trial. Fletcher did not assign this error to the district court on appeal.

Neb. Ct. R. § 6-1452(A)(7) (2011) provides:

Within 10 days of the filing of the bill of exceptions in the district court, the appellant shall file with the district court a statement of errors, which shall consist of a separate, concise statement of each error a party contends was made by the trial court. . . . Consideration of the case will be limited to errors assigned and discussed. The district court may, at its option, notice a plain error not assigned.

Allegations of ineffectiveness of counsel fall within the scope of this rule. *State v. Gerstner*, 244 Neb. 508, 507 N.W.2d 490 (1993). When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). Otherwise, the ineffective assistance of trial counsel issue will be procedurally barred. *Id.*

In this case, though Fletcher represented himself for the vast majority of the proceedings, he did retain counsel for a posttrial motion, which occurred before his direct appeal. Fletcher then filed his direct appeal as a pro se litigant. Therefore, Fletcher was represented by a different person for purposes of his ineffective assistance of counsel claim on direct appeal. Since Fletcher now raises his ineffective assistance of counsel claims for the first time, having not raised it before the district court, we cannot consider them as they are procedurally barred.

### 4. DISCOVERY

Fletcher argues the district court erred in affirming the county court's ruling that the State had complied with the discovery order. Fletcher argues the State intentionally provided him with the incorrect address of a material witness. Fletcher argues that as a result, he was unable to subpoena this witness to testify at trial.

The record is very clear that both Fletcher and the State filed their witness and exhibit lists on the same day, July 8, 2015. The State's witness list included the complained of witness and his North Dakota address. Fletcher attempted certified mail service to the witness at a different address

- 6 -

in North Dakota. Moreover he did not follow the procedures outlined in Neb Rev. Stat. § 29-1907 (Reissue 2016) for obtaining service on out-of-state witnesses in criminal cases, even though he knew that this procedure existed. The fact that Fletcher was unable to properly issue a subpoena for an out-of-state witness is not due to the State hiding evidence. Nor is it due to any error of the county court. As we stated above, a pro se party is held to the same standards as one who is represented by counsel. Therefore, we find the district court did not err in affirming the ruling of the county court.

## 5. MOTION TO CONTINUE TRIAL

Fletcher argues the district court erred in affirming the ruling of the county court which denied Fletcher's motion to continue trial. Fletcher argues that the continuance was necessary so that he could subpoena a material witness.

An appellate court reviews a judge's ruling on a motion to continue for an abuse of discretion. *Moreno v. City of Gering*, 293 Neb. 320, 878 N.W.2d 529 (2016). Fletcher was charged by complaint on August 22, 2014. He orally moved for a continuance on July 20, 2015, the date of trial. The jury pool had been convened. Fletcher, at the very latest, knew his witness's mailing address on July 8, 2015, and knew it would be difficult, if not impossible, to obtain proper out-of-state service before trial. However, he waited until the date of trial to seek a continuance. We find that based on the record, the district court did not err in affirming the ruling of the county court overruling Fletcher's motion to continue.

## 6. MOTIONS FOR NEW TRIAL

Fletcher argues the district court erred in affirming the county court's denial of his motion for a new trial. Fletcher argues two instances of juror misconduct. Additionally, we believe Fletcher argues newly discovered evidence in support of his motion for a new trial.

### (a) Juror With Family Relationship to Prosecutor

Fletcher first argues that juror misconduct occurred in this case because one juror was a second-cousin to the prosecutor's wife. The evidence at the motion for new trial demonstrated that the prosecutor's wife's grandfather and the juror's grandmother were brother and sister. The juror testified at the hearing that he was not friends with the prosecutor or his wife and that they had never spent time at one another's homes.

Neb. Rev. Stat. § 29-2006(4) (Reissue 2016) provides that a juror shall be challenged for cause when "he is a relation within the fifth degree to the person alleged to be injured or attempted to be injured, or to the person on whose complaint the prosecution was instituted, or to the defendant. . . ." The county court analyzed this issue under § 29-2006(4), finding that the relationship of the prosecutor's wife to the juror was at the sixth degree, therefore there was no violation of the statute. The district court determined that § 29-2006(4) did not apply at all. The district court noted that the statute only applied to the familial relationship between a juror and the defendant or a victim, not to an attorney or their spouse. Therefore, the juror was not related to a person who qualified under any of the relationships described by the statute. Upon our review, we find the district court did not err in its findings.

### (b) Juror With Residence Outside Cherry County

Fletcher next argues a second instance of juror misconduct because a juror at the hearing admitted to not being a resident of Cherry County at the time of trial. Fletcher argues that as a result of this juror misconduct, he should have been granted a new trial.

The district court analyzed this assignment of error under *State v. Harris*, 264 Neb. 856, 652 N.W.2d 585 (2002). In *Harris*, the Nebraska Supreme Court determined that a criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct and (2) that the misconduct was prejudicial to the extent that the defendant was denied a fair trial. The district court found that unlike the facts found in *Harris*, the evidence did not demonstrate that the juror intentionally or deliberately concealed information from the court, counsel, or Fletcher in an attempt to be placed on the jury. The district court also found that Fletcher failed to demonstrate any prejudice as a result of the juror being empaneled. Upon our review of the record, including the voir dire proceedings and the posttrial testimony of the juror, we find the district court did not err in affirming the county court's overruling of Fletcher's motion for a new trial based on juror misconduct. We note that the juror's address was written on a juror questionnaire, a document available to the parties. Moreover, although the juror did not respond to the court's question in voir dire regarding residency in Cherry County, his testimony at the hearing on the motion for new trial demonstrated that his omission was inadvertent and that he had no hidden motive to be seated on the jury. Moreover, his testimony established that he had no connection to anyone involved in the case. On this record, we cannot find that Fletcher has met his burden to prove juror misconduct.

### (c) Alleged Newly Discovered Evidence

Fletcher argues the district court erred in determining that he should not be granted a motion for a new trial based on alleged newly discovered evidence.

Fletcher's first motion for a new trial was overruled on December 4, 2015. Fletcher filed a "Motion to Set Aside Denial of New Trial" on December 7, which was overruled on February 4, 2016. Fletcher filed a second motion for new trial on February 25, 2016. He filed his notice of appeal to the district court for Cherry County on March 3, therefore divesting the county court of its jurisdiction to hear his second motion for a new trial. His claim regarding newly discovered evidence was first raised in his second motion for a new trial.

Once a party perfects an appeal to an appellate court, the lower courts are divested of subject matter jurisdiction over that case. *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012). Therefore, the county court had no jurisdiction to rule on Fletcher's second motion. Moreover, since Fletcher's claim of newly discovered evidence was not raised in the proceedings properly before us, we have no evidence before us as to any alleged newly discovered evidence. Therefore, we must affirm the decision of the district court.

## VI. CONCLUSION

We find the district court did not err in affirming the county court's denying Fletcher's motion to dismiss based on speedy trial grounds. The district court did not err in finding that no impermissible evidence was given to the jury during deliberations, that Fletcher did not receive ineffective assistance of counsel, and that the State had produced adequate discovery under the

discovery order. The district court did not err in affirming the county court's overruling of Fletcher's motion to continue trial. Finally, there was no error in overruling Fletcher's motions for a new trial.

AFFIRMED.