STATE OF NEBRASKA, APPELLEE, V.
JEROME M. CLARK, APPELLANT.
637 N.W.2d 671

Filed January 8, 2002.   No. A-01-049.

Thomas C. Riley, Douglas County Public Defender, and Brenda J. Leuck for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Jerome M. Clark appeals from his convictions for attempted kidnapping, kidnapping, first degree sexual assault, and use of a deadly weapon to commit a felony. Clark argues that the trial court erred in not finding that he was legally insane at the time the crimes were committed. Clark also argues that the crime of use of a deadly weapon was not proved because the handgun involved was inoperable. For the reasons stated below, we affirm the decision of the district court regarding the insanity issue. We also affirm the district court's decision regarding the use of a deadly weapon conviction, because we conclude that the operability of a handgun is not relevant to whether it is a deadly weapon as defined by Neb. Rev. Stat. § 28-1201 (Reissue 1995).

## II. BACKGROUND

On March 13, 1998, Clark approached A.F. in Omaha, Douglas County, Nebraska, while she was delivering mail on her route. Clark pointed a handgun at her and asked her to get into his car. When A.F. refused to get into the car, Clark began to get out of his car, still pointing the gun at her. A.F. then pulled out her Mace, forcing Clark back into his car. A.F. ran to a house along her route, where the resident let her in.

Later that same day, in Omaha, Clark approached S.S. At gunpoint, Clark ordered S.S., who was 13 years old, to get into his car. S.S. got in the vehicle, and Clark drove her to another area of Omaha. Clark told S.S. that she was going to do a "favor" for him and perform oral sex. S.S. tried to talk her way out of doing this, but was continuously threatened with a handgun. Eventually, S.S. did perform oral sex on Clark. Next, Clark told S.S. he was letting her go because she did not know what a "sister" was. From the record, it is unclear what was meant by this statement. After exiting the vehicle, S.S. walked home. At about 7 p.m., S.S. told her aunt what had happened, and then S.S. contacted the police. Later that evening, S.S. gave the police a statement about the incident that had occurred several hours earlier.

The police received an anonymous tip that led them to Clark. He was subsequently arrested. Pursuant to a search warrant, the

police searched Clark's residence and found a semiautomatic handgun under a chair cushion. Both A.F. and S.S. identified Clark as the person who approached them, and they also identified the gun as the one he used. During the initial interview at the police station, Clark cooperated. When asked why he committed these crimes, he stated that "he just didn't know."

On April 7, 1998, Clark was charged by information with the following four counts: count I, attempted kidnapping in violation of Neb. Rev. Stat. §§ 28-201 and 28-313(1) (Reissue 1995); count II, kidnapping in violation of § 28-313(1); count III, first degree sexual assault in violation of Neb. Rev. Stat. § 28-319 (Reissue 1995); and count IV, use of a deadly weapon to commit a felony in violation of Neb. Rev. Stat. § 28-1205(1) (Reissue 1995).

On June 2, 2000, the court held a competency hearing and found Clark competent to stand trial. A bench trial was held on August 10. At trial, the State entered the police reports and affidavits of A.F. and S.S. to prove Clark committed these crimes. Dr. Bruce Gutnik then testified for the defense that on July 13, 1998, he evaluated Clark to determine whether Clark was insane at the time the crimes were committed. Following his evaluation, Dr. Gutnik concluded Clark suffered from schizoaffective disorder. Dr. Gutnik also found Clark was unable to understand, at the time the crimes were committed, the nature and consequences of his actions or the difference between right and wrong.

In rebuttal, the State called Drs. Scott A. Bresler and Scott Moore to establish that Clark was legally sane at the time the crimes were committed. Dr. Moore testified that Clark was admitted to the Lincoln Regional Center in December 1998. The record indicates all three doctors found Clark suffered from a mental illness, but Drs. Bresler and Moore testified this mental illness did not impair Clark's ability to understand the nature and consequences of his actions or his ability to know right from wrong. Drs. Bresler and Moore found Clark legally sane at the time the crimes were committed.

After taking the case under advisement, the court filed an order on September 7, 2000, finding Clark guilty of counts I, II, III, and IV. In the order, the court found that Clark was not legally insane at the time the crimes were committed. On

December 13, the court sentenced Clark to 5 to 10 years' imprisonment for attempted kidnapping, 15 to 20 years' imprisonment for kidnapping, 15 to 20 years' imprisonment for first degree sexual assault, and 5 to 10 years' imprisonment for use of a deadly weapon to commit a felony. Counts II and III were ordered to be served concurrently with each other. Count I was ordered to be served consecutively to counts II and III. Count IV was ordered to be served consecutively to counts I, II, and III. We note that Clark states in his brief that counts I, II, and III were to be served concurrently with each other. Clark also states count IV is to be served consecutively to the first three counts. However, this is not an assigned error, and it is clear on the record that these three counts were not ordered to be served concurrently. We also note that in addition to being sentenced on these four counts, Clark was also sentenced on another assault conviction which is not an issue in this appeal. Clark's timely appeal is now before us.

### III. ASSIGNMENTS OF ERROR

On appeal, Clark has assigned two errors. Clark argues that the court should have found him to be legally insane at the time these crimes were committed. Clark also alleges there was insufficient evidence to find he used a deadly weapon during the commission of a felony.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

Since Clark's two assigned errors include sufficiency issues, the following standard of review applies to both. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001); *State v. Rieger*, 260 Neb. 519, 618 N.W.2d 619 (2000). Regardless of whether evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as failure to direct a verdict, insufficiency of evidence, or failure to prove

a prima facie case, the standard of review is the same. In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641 (1998); *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998).

### 2. INSANITY DEFENSE

■ Clark first argues that the district court erred in not finding him legally insane at the time the crimes were committed. We note that Clark had the burden under Neb. Rev. Stat. § 29-2203 (Reissue 1995) to prove he was legally insane. Section 29-2203 states in pertinent part: "Any person . . . may plead that he or she is not responsible by reason of insanity at the time of the offense and in such case the burden shall be upon the defendant to prove the defense . . . by a preponderance of the evidence."

■ The two elements of the defense of insanity are (1) that the defendant had a mental disease and (2) that the defendant did not understand the nature and consequences of his or her actions or did not know the difference between right and wrong with respect to what he or she was doing. *State v. Hurst*, 8 Neb. App. 280, 594 N.W.2d 303 (1999).

Since there is no dispute that all three expert witnesses found Clark had a mental disease, we begin by addressing the second prong of the insanity defense. At trial, Clark adduced testimony from Dr. Gutnik that at the time the crimes were committed, Clark did not understand the nature and consequences of his actions or know the difference between right and wrong. The State adduced testimony from Drs. Bresler and Moore that Clark did understand the nature and consequences of his actions and did understand the difference between right and wrong.

Dr. Bresler explained during his testimony how a person could suffer from a mental illness and still understand the nature and consequences of his actions and know right from wrong. In this case, Dr. Bresler testified he found Clark had hallucinations as a result of his mental illness. But Dr. Bresler

found these hallucinations had no connection to his actions on March 13, 1998. From the record, it appears Clark thought he was "Godlike," the "son of Jesus," or "Elijah" during his hallucinations. Dr. Bresler stated at trial that he could find no connection between Clark's thinking these things and "the abduction and forcible fellatio of a 12-year-old girl."

At Clark's trial, the court heard all of the evidence and took into consideration the testimony of all three expert witnesses. In the court's order, the judge explicitly stated that he found Clark "legally sane," while noting the disagreement between the doctor testifying for Clark and the doctors testifying for the State. This decision was based on the testimony that Clark knew the difference between right and wrong and understood the consequences of his actions.

Even though there is conflicting evidence in this case, we do not resolve that conflict or reweigh the credibility of the witnesses. Thus, viewing the evidence in the light most favorable to the State, Drs. Bresler's and Moore's testimonies are sufficient to establish Clark was not legally insane at the time the crimes were committed. The court did not err in finding Clark failed to meet his burden of proof as required by § 29-2203. As such, this assigned error is without merit.

### 3. Use of Deadly Weapon to Commit Felony

Clark also challenges the sufficiency of the evidence to support his conviction for use of a deadly weapon during the commission of a felony in violation of § 28-1205. More specifically, Clark asserts that because the gun was not proved to be operable, he cannot be convicted of use of a deadly weapon to commit a felony.

There are two statutory sections which must be examined to determine if there is merit to Clark's assigned error. The first is § 28-1205, which states in pertinent part:

> (1) Any person who uses a *firearm*, a knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state or who unlawfully possesses a *firearm*, a knife, brass or iron knuckles, or any other deadly weapon during the commission of any felony which may be prosecuted in a court of

this state commits the offense of using a deadly weapon to commit a felony.

(Emphasis supplied.) The second pertinent section is § 28-1201, which defines a firearm as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or frame or receiver of any such weapon."

In this case, Clark does not dispute that he used a semiautomatic handgun during the commission of these crimes. Clark did not argue at trial nor does he argue on appeal that the gun he used to commit these crimes does not fall under the definition set forth in § 28-1201, that is, that the handgun used was a "weapon which is designed to or may readily be converted to expel any projectile." What Clark did argue at trial, and now argues on appeal, is that the statute requires the gun to be operable for him to be guilty of the crime of using a firearm during the commission of a felony.

At trial, a crime laboratory report from the Omaha Police Department was admitted as an exhibit at trial. This report described the gun found in Clark's residence as a ".32 ACP caliber semiautomatic pistol S/N 169775 [with a] matching magazine." In that same report, the police concluded the gun was nonoperational at the time of testing. However, there is no evidence that this gun was not a "weapon which is designed to or may readily be converted to expel any projectile," i.e., the statutory language defining what is a firearm.

Other jurisdictions have dealt with this same issue regarding whether it is sufficient for a firearm to be designed to be operational at some point, whether that be in the past or the future. The North Carolina Supreme Court found that operability was not an essential element to prove a felon was in possession of a firearm. *State v. Jackson*, 353 N.C. 495, 546 S.E.2d 570 (2001). Like the Nebraska statute, the statute in North Carolina did not specifically address whether the weapon had to be operational for it to be considered a firearm. Additionally, the defendant in *Jackson* argued that if a firearm was inoperable at the time of possession, then it was not a firearm under the statutory definition. The court did not agree with this "illogical conclusion" and found that it

" 'beg[ged] reason to assume that our Legislature intended to allow convicted felons to possess firearms so long as they

are unloaded, or so long as they are temporarily in disrepair, or so long as they are temporarily disassembled, or so long as for any other reason they are not immediately operable.'" *Id.* at 502, 546 S.E.2d at 574, quoting *State v. Padilla*, 95 Wash. App. 531, 978 P.2d 1113 (1999).

The Court of Appeals of Virginia also found inoperability irrelevant. *Armstrong v. Commonwealth*, 36 Va. App. 312, 549 S.E.2d 641 (2001). The defendant in *Armstrong* conceded on appeal that the rifle was "'designed or intended to expel a projectile by discharge or explosion of gun powder.'" *Id.* at 315, 549 S.E.2d at 642. The defendant also argued that the evidence established the gun was inoperable at the time the crime was committed and that therefore, the evidence was insufficient to sustain his conviction for felon in possession of a firearm. There was no language included in the Virginia statute distinguishing between operable and inoperable as part of the definition of firearm. The court found: "Had the legislature wished to draw a distinction between operable and inoperable firearms, it would have done so with clear and distinct language." *Id.* at 321, 549 S.E.2d at 645. The court further stated that since the legislature made no such distinction, there was sufficient evidence to find the defendant guilty, even if the weapon was inoperable.

Other jurisdictions have statutes which clearly state that a "firearm" under the statute can be operable or inoperable, loaded or unloaded. See, *Fortt v. State*, 767 A.2d 799 (Del. Super. 2001); *State v. Webster*, 94 Hawaii 241, 11 P.3d 466 (2000); *Hughes v. State*, 12 P.3d 948 (Nev. 2000); *State v. Middleton*, 143 N.J. Super. 18, 362 A.2d 602 (1976). The federal circuit courts have found that the inoperability of a firearm is not an affirmative defense. See *U.S. v. Adams*, 137 F.3d 1298 (11th Cir. 1998).

Based on the above-persuasive authority and our independent analysis of this statute, we conclude that the Nebraska statute defining a firearm fits in the category of cases where the Legislature would have included operability if that is what was intended. We agree with the rationale of the Virginia and North Carolina courts that it would be irrational to allow a person committing a felony to use a nonoperational gun, but which was in fact designed to expel a projectile. It is irrelevant whether or not

a gun is operable to convict a person of using a deadly weapon during the commission of a felony. The evidence in this case shows that Clark used a weapon "designed" to expel a projectile. The police report stated the weapon found was a ".32 ACP caliber semiautomatic pistol S/N 169775 [with a] matching magazine." The language in § 28-1201 encompasses a weapon which is designed to or may readily be converted to expel any projectile which this gun was. We find this assignment is without merit.

## V. CONCLUSION

We affirm the district court's judgment finding that Clark failed to prove he was legally insane at the time the crimes were committed. We also affirm the district court's judgment that Clark used a deadly weapon during the commission of a felony. This is so because the operability of a handgun is not relevant to whether it is a deadly weapon as defined by § 28-1201.

AFFIRMED.