Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/21/2018 09:10 AM CDT

State of Nebraska, appellee, v.
Adam T. Petsch, appellant.
___ N.W.2d ___

Filed June 29, 2018.    No. S-17-997.

1. **Constitutional Law: Search and Seizure: Motions to Suppress:
   Appeal and Error.** In reviewing a trial court's ruling on a motion to
   suppress based on a claimed violation of the Fourth Amendment, an
   appellate court applies a two-part standard of review. Regarding histori-
   cal facts, an appellate court reviews the trial court's findings for clear
   error, but whether those facts trigger or violate Fourth Amendment pro-
   tection is a question of law that an appellate court reviews independently
   of the trial court's determination.

2. **Trial: Investigative Stops: Warrantless Searches: Appeal and Error.**
   The ultimate determinations of reasonable suspicion to conduct an
   investigatory stop and probable cause to perform a warrantless search
   are reviewed de novo, and findings of fact are reviewed for clear error,
   giving due weight to the inferences drawn from those facts by the
   trial judge.

3. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.**
   When a motion to suppress is denied pretrial and again during trial on
   renewed objection, an appellate court considers all the evidence, both
   from trial and from the hearings on the motion to suppress.

4. **Constitutional Law: Police Officers and Sheriffs: Search and
   Seizure: Arrests.** A tier-one police-citizen encounter involves the vol-
   untary cooperation of the citizen elicited through noncoercive question-
   ing and does not involve any restraint of liberty of the citizen. Because
   tier-one encounters do not rise to the level of a seizure, they are outside
   the realm of Fourth Amendment protection. A tier-two police-citizen
   encounter involves a brief, nonintrusive detention during a frisk for
   weapons or preliminary questioning. A tier-three police-citizen encoun-
   ter constitutes an arrest, which involves a highly intrusive or lengthy
   search or detention. Tier-two and tier-three police-citizen encounters are

seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.

5. **Warrantless Searches: Probable Cause: Police Officers and Sheriffs.** Probable cause to support a warrantless arrest exists only if law enforcement has knowledge at the time of the arrest, based on information that is reasonably trustworthy under the circumstances, which would cause a reasonably cautious person to believe that a suspect has committed or is committing a crime.

6. **Probable Cause: Words and Phrases.** Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances.

7. **Probable Cause: Appeal and Error.** An appellate court determines whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances.

8. **Probable Cause: Police Officers and Sheriffs.** An arresting officer's state of mind is irrelevant to the existence of probable cause.

9. **Probable Cause: Appeal and Error.** Appellate courts should avoid an excessively technical dissection of the factors supporting probable cause. The test to be employed is whether the totality of the circumstances would suggest that probable cause existed.

Appeal from the District Court for Lancaster County, ROBERT R. OTTE, Judge, on appeal thereto from the County Court for Lancaster County, TIMOTHY C. PHILLIPS and THOMAS E. ZIMMERMAN, Judges. Judgment of District Court affirmed.

Brad Roth, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ., and JOHNSON, District Judge.

HEAVICAN, C.J.

## INTRODUCTION

Adam T. Petsch was charged with aggravated driving under the influence and displaying unlawful or fictitious license plates. His motion to suppress was denied, and he was convicted following a stipulated bench trial. He appeals.

We moved this case to our docket because it presented similar facts to, and Petsch relied upon the Nebraska Court of Appeals' opinion in, *State v. Botts*.[1] We recently reversed the Court of Appeals' opinion in *Botts* on petition for further review.[2] We affirm Petsch's convictions.

## BACKGROUND

On November 20, 2015, at approximately 11:25 a.m., Troy Aksamit, an officer with the Lincoln, Nebraska, police department, observed a white sport utility vehicle (SUV) with an expired license plate. Aksamit was traveling in his patrol vehicle in the opposite direction, and so he conducted a U-turn and proceeded to follow the SUV. The SUV had turned left by that time, so Aksamit also turned left. Aksamit testified he felt that the driver was "attempting to speed up and flee from me." At that time, Aksamit activated his patrol vehicle's overhead lights and sirens. Despite this, the SUV did not pull over and continued to make left turns before eventually coming to a stop.

A review of the video of the stop supports Aksamit's testimony that the SUV was attempting to flee from him. The video shows that it took Aksamit approximately 20 seconds to catch up to the SUV. At that time, Aksamit activated his patrol vehicle's lights and sirens. From that point, the SUV drove on for over 45 seconds, making left turns on mostly deserted side streets and also stopping at a stop sign, but then crossing that street, with Aksamit's patrol vehicle following behind with lights flashing.

While stopped behind the SUV, Aksamit noted that it had tinted windows and some equipment stored in the back, but testified that he could see some movement inside the SUV. After about 30 seconds, Aksamit made contact with Petsch, the driver of the SUV. The video shows that Aksamit approached the SUV with his service revolver drawn from its holster, but

---

[1] See *State v. Botts*, 25 Neb. App. 372, 905 N.W.2d 704 (2017).

[2] See *State v. Botts*, 299 Neb. 806, 910 N.W.2d 779 (2018).

held the revolver pointed down to the ground. As soon as Petsch exited the SUV and indicated compliance through his actions, Aksamit holstered his revolver. The revolver remained unholstered for under 30 seconds and was never brandished in a threatening manner. Askamit testified that he drew the weapon for officer safety reasons because he was unaware of whether there was another occupant in the SUV; it transpired that Petsch was the only occupant of the SUV.

After exiting the SUV, Petsch was handcuffed without incident; Aksamit testified that he also handcuffed Petsch for officer safety reasons. After other officers arrived at the scene, Aksamit placed Petsch in the back of his patrol vehicle. Petsch declined to undergo field sobriety tests and refused consent for a search of his SUV.

Aksamit testified that he noticed Petsch seemed "impaired" and had a "slowed response" and that he "had to ask him four times, basically, the same question." Aksamit was concerned that Petsch might be having a medical episode. Aksamit also testified that he noted Petsch had a "little bit of a problem walking." Aksamit left Petsch alone in the patrol vehicle for a few minutes; upon returning, Aksamit "immediately detected a strong odor of alcoholic beverage." The record shows that a second officer also detected this odor.

Aksamit testified that he did not see anything in plain view when he looked into Petsch's SUV, but that he later searched it. In so searching, Aksamit found a cup in the SUV that contained a "strong alcoholic beverage." Aksamit also found one empty 50-milliliter bottle and two unopened 50-milliliter bottles of "Jack Daniel's Tennessee Honey" whiskey.

Because of Petsch's "reactions to the questions, me asking questions four or five times, him slow to respond, acting as though he was confused . . . a very strong odor of alcoholic beverage," Aksamit concluded that Petsch was under the influence of alcohol. Upon being transported to "detox," a chemical test was performed and Petsch's breath test registered at .286 of a gram of alcohol per 210 liters of breath.

Petsch was cited for driving under the influence (DUI), fleeing to avoid arrest, and failing to attach renewal decals to his license plate. While Aksamit testified that Petsch's SUV's front license plate did not have an updated sticker, he testified that the back license plate did have such a sticker.

Petsch was charged in the county court with DUI and driving with fictitious plates. Petsch filed a motion to suppress "any and all evidence regarding observations made of [Petsch], statements . . . made by [Petsch], any results of chemical tests of [Petsch's] blood, breath, or urine or evidence of any kind that was obtained by law enforcement personnel as a result of the stop and subsequent arrest." As relevant to this appeal, Petsch alleged that law enforcement lacked (1) reasonable suspicion to stop and seize his SUV, (2) probable cause to handcuff him, and (3) probable cause to arrest him for DUI.

Following a hearing, the county court denied Petsch's motion to suppress. Petsch was eventually found guilty in a stipulated bench trial. For the DUI conviction, Petsch was sentenced to probation, with a 30-day term of house arrest and a $1,000 fine. For the fictitious plates conviction, Petsch was fined $50. Petsch appealed to the district court, which affirmed. He appeals.

## ASSIGNMENTS OF ERROR

Petsch assigns that the district court erred in (1) finding that he was not arrested when he was handcuffed at gunpoint, (2) finding sufficient probable cause to arrest him for DUI, (3) overruling his motion to suppress, and (4) finding him guilty of second-offense DUI and unlawful/fictitious display of license plates.

## STANDARD OF REVIEW

[1,2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[3]

---

[3] *Id.*

Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.[4] The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge.[5]

[3] When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.[6]

## ANALYSIS

The crux of Petsch's appeal is that the county court erred in denying his motion to suppress. Petsch contended in the motion to suppress that law enforcement lacked (1) reasonable suspicion to stop and seize his vehicle, (2) probable cause to handcuff him, and (3) probable cause to arrest him for DUI. Petsch sought the suppression of "any and all evidence regarding observations made of [Petsch], statements . . . made by [Petsch], any results of chemical tests of [Petsch's] blood, breath, or urine or evidence of any kind that was obtained by law enforcement personnel as a result of the stop and subsequent arrest."

Before turning to the issues on appeal, we note what is *not* at issue on appeal. In his motion to suppress, Petsch contends that the stop of his SUV was not supported by reasonable suspicion. Aksamit testified that the initial reason for stopping Petsch was for operating a vehicle with fictitious plates. And on appeal, Petsch assigns that the court erred in finding him

---

[4] *Id.*

[5] *Id.*

[6] *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017).

guilty of that charge. But Petsch does not challenge the stop in his appeal, and does not further argue his assignment of error regarding the fictitious plates conviction. Accordingly, we will not address either contention.

[4] We begin with a refresher on police-citizen encounters and probable cause. A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen. Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection.[7] A tier-two police-citizen encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning.[8] A tier-three police-citizen encounter constitutes an arrest, which involves a highly intrusive or lengthy search or detention.[9] Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.[10]

[5-7] Probable cause to support a warrantless arrest exists only if law enforcement has knowledge at the time of the arrest, based on information that is reasonably trustworthy under the circumstances, which would cause a reasonably cautious person to believe that a suspect has committed or is committing a crime.[11] Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances.[12] An appellate court determines whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances.[13]

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013).

[12] *Id.*

[13] *Id.*

*Law Enforcement Had Probable*
*Cause to Arrest Petsch Based*
*Upon Petsch's Flight.*

We turn first to Petsch's contention set forth in his first assignment of error: that he was arrested when Aksamit placed him in handcuffs after stopping his SUV and that probable cause to do so was lacking. We observe that Aksamit testified that he did not arrest Petsch at the time he handcuffed him, but, rather, restrained Petsch for officer safety reasons. However, we do not opine on the propriety of Aksamit's action insofar as it relates to officer safety, because we conclude that there was probable cause to arrest Petsch as a result of his flight from Aksamit.[14]

[8] The U.S. Supreme Court explained in *Devenpeck v. Alford*[15] that

> an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. . . . That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, "'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" . . . "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." . . . "[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer."

---

[14] See Neb. Rev. Stat. § 28-905 (Reissue 2016).

[15] *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004) (citations omitted).

In this case, the fact that Aksamit's subjective belief was that he was handcuffing Petsch for officer safety reasons is immaterial. Aksamit knew that Petsch had attempted to flee from him when Aksamit activated his patrol vehicle's lights and sirens and tried to stop Petsch. Indeed, Aksamit referenced in his testimony that Petsch "just took off from me," as support for his decision to place Petsch in handcuffs. A reasonable officer could have believed that Petsch was operating a "motor vehicle to flee in such vehicle in an effort to avoid arrest or citation" as prohibited by § 28-905(1).

There was probable cause to support Petsch's arrest for operating a motor vehicle to avoid arrest. As such, we find no merit to Petsch's first assignment of error.

*Probable Cause to Support*
*DUI Arrest.*

In his second assignment of error, Petsch assigns that law enforcement lacked probable cause to arrest him for DUI. We again disagree.

Aksamit testified that Petsch had a slow reaction time, appeared confused, and had to be asked questions multiple times. According to Aksamit, Petsch stumbled while walking to Aksamit's patrol vehicle. After being in that vehicle for a short period of time, both Aksamit and another officer noticed the odor of alcoholic beverage. Aksamit's report, which was part of the trial stipulation, noted that prior to Petsch's being placed into the patrol vehicle, the vehicle did not smell like alcohol. In other words, the record shows that the smell of alcohol was emanating from Petsch and not from another source.

Finally, Aksamit testified that he was concerned Petsch had tried to flee and that he, Aksamit, was unaware of what Petsch was doing inside his SUV during and immediately after the vehicle stop.

On appeal, Petsch contends that there were other indicia that would suggest that he was not under the influence of alcohol—for example, he did not engage in other erratic driving;

did not admit to drinking; did not have watery or bloodshot eyes; did not have slurred speech; was cooperative; and walked appropriately and did not fall, stagger, or sway. Also, no field sobriety tests were conducted and no preliminary breath test was requested.

[9] Relying on U.S. Supreme Court case law, we recently noted in *State v. Botts* that "appellate courts should avoid an '"excessively technical dissection" of the factors supporting probable cause.'"[16] The test to be employed is whether the totality of the circumstances would suggest that probable cause existed. We went on to observe that "[i]n assessing probable cause, an officer's '"relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts."'"[17] And in applying that rationale here, we note that the fact that these indicia of DUI were not present does not mean that Aksamit was not permitted to consider the signs that were present—chief among these being the strong odor of alcohol and Petsch's apparent confusion and slowed reaction time.

Petsch also argues that no field sobriety tests or preliminary breath test were conducted, and he further asserts that any suggestion that he declined those tests was not reflective of the record. But one of the responding officers testified, and the recording of the stop confirmed, that the officer tried to conduct a field sobriety test involving the alphabet. Petsch declined to participate and indicated that he would first speak to his lawyer. It was not unreasonable, given this request, that no further field sobriety testing or preliminary breath testing was sought.

We find that given the totality of these circumstances, probable cause existed to support the DUI arrest. There is no merit

---

[16] *State v. Botts*, *supra* note 2, 299 Neb. at 816, 910 N.W.2d at 788 (quoting *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018)).

[17] *Id.* at 817, 910 N.W.2d at 788.

to Petsch's second assignment of error. And because there was probable cause to support Petsch's detention and arrest, the county court's denial of the motion to suppress was not in error. There is no merit to Petsch's third assignment of error.

*No Error in Guilty Finding.*

Finally, Petsch assigns that the court erred in finding him guilty of DUI and driving with fictitious plates. As we noted above, Petsch does not argue the assignment of error as it relates to the fictitious plates. And while Petsch does preserve his assignment of error as to the DUI conviction, this contention is based upon his assertion, which we have above rejected, that the county court erred in denying his motion to suppress.

We have concluded that there was probable cause to arrest Petsch. And we further note that when alcohol breath testing was later completed at a detoxification center, the content of alcohol in Petsch's breath was .286, which is 3½ times the legal limit and sufficient to support Petsch's conviction for DUI.[18] There is no merit to Petsch's final assignment of error.

## CONCLUSION

The decision of the district court affirming the county court's convictions is affirmed.

AFFIRMED.

---

[18] See Neb. Rev. Stat. §§ 60-6,196 (Reissue 2010) and 60-6,197.03(5) (Supp. 2015).