IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. KHAT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

THOK S. KHAT, APPELLANT.

Filed December 31, 2018.    No. A-18-081.

Appeal from the District Court for Sarpy County, STEFANIE A. MARTINEZ, Judge, on appeal thereto from the County Court for Sarpy County, ROBERT C. WESTER, Judge. Judgment of District Court affirmed.

Patrick J. Boylan, Sarpy County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Thok S. Khat appeals from the order of the district court for Sarpy County, which affirmed his convictions following a jury trial in Sarpy County Court for carrying a concealed weapon, resisting arrest, and obstructing a peace officer. The county court had overruled Khat's motion to suppress evidence obtained as a result of a search of Khat and his vehicle following a traffic stop. On appeal, Khat assigns error to the district court's affirmance of this ruling and to its conclusion that the evidence was sufficient to support his convictions. We affirm the district court's order.

### BACKGROUND

This appeal arises out of an incident that occurred on December 2, 2016. Following a traffic stop on that date, police smelled an odor of marijuana coming from Khat's vehicle and asked him

- 1 -

to get out of his vehicle, after which a struggle ensued and Khat was arrested. Police searched Khat and found a handgun in his pocket, and a search of his vehicle located what appeared to be marijuana and a digital scale.

The State filed a complaint in the county court, charging Khat with a number of infractions and offenses, including, as relevant to the present appeal, resisting arrest in violation of Neb. Rev. Stat. § 28-904 (Reissue 2016), obstructing a police officer in violation of Neb. Rev. Stat. § 28-906 (Reissue 2016), and carrying a concealed weapon in violation of Neb. Rev. Stat. § 28-1202 (Reissue 2016), all three of which are Class I misdemeanors.

Khat filed a motion to suppress, alleging that there was no probable cause to stop his vehicle, the stop violated his constitutional rights, he did not consent to a search of his person or vehicle, the searches of his person and vehicle were not incident to a lawful arrest, he was placed in custody without an advisement of his *Miranda* rights, there was no active warrant or "locate" for him when he was stopped, and all the physical and testimonial evidence seized was "the fruit of the tree of an illegal arrest."

A suppression hearing was held before the county court. The court heard testimony from police officers Josh Maguire and Joe Bailey of the Bellevue Police Department, who were both involved in the traffic stop of Khat, and it also received exhibit 1, a copy of the video recording of the stop from Maguire's cruiser camera.

Maguire and Bailey's testimony from the suppression hearing shows that on December 2, 2016 at approximately 2 a.m. they were parked next to each other in their cruisers in a parking lot in Bellevue observing traffic when they heard an approaching vehicle with a "loud muffler" or "exhaust" that was "much louder" than normal. The vehicle was loud enough that they heard it approaching their location before it was visible. The officers began following the vehicle to make a traffic stop for the muffler violation, and when they pulled in behind it, they could see that it did not have any license plates. Once behind the vehicle, they also observed that one of the taillights appeared to have red tape over it that was "starting to come off a little bit; so there was some white light showing."

After Maguire pulled out behind the vehicle and called the traffic stop over his radio, he activated his emergency lights. The vehicle stopped, and as the officers approached the vehicle, they saw that it had valid in-transit tags. The officers made contact with the driver, who turned off the vehicle and rolled down the driver's side window. He provided his "Nebraska ID card," which identified him as Khat. According to Maguire, he smelled an odor of "unburnt marijuana" coming from the vehicle as he spoke with Khat. Bailey, who approached the passenger side of the vehicle, could not smell anything initially since the window was up on that side. However, when Khat retrieved his paperwork, he opened the glove box, and Bailey observed a jar containing "a little bit of green leafy residue" that appeared to be marijuana. Later, when the car door was open, Bailey also smelled marijuana.

After Maguire smelled the odor of marijuana, he made a couple of requests for Khat to get out of the vehicle, which Khat refused. After that, Maguire told Khat he would be arrested if he did not get out of the vehicle, and Khat finally complied. When Khat exited the vehicle, Maguire noticed what appeared to be the clip of a knife in Khat's front pocket, and he asked Khat to keep his hands out of his pockets. Despite Maguire's instruction, Khat kept reaching for his pockets. The first time, Maguire told Khat he thought he had identified a knife in the pocket, but Khat told

him that it was not a knife. Maguire instructed Khat not to put his hands in his pockets a second time as they were walking back to the front of Maguire's patrol car. Because Khat continued to put his hands in his pockets, Maguire grabbed Khat's hands to keep them from his pockets. Khat then tensed up, tried to turn back toward his vehicle, and said he wanted to retrieve his keys. Maguire did not let him do this "[f]or safety." Maguire decided to handcuff Khat and told him to turn around and face the police cruiser, but he refused to do so. According to Maguire, Khat began to tense up and tried to pull his hands away from Maguire and Bailey who were both grabbing him at that point. Bailey indicated that Khat was "pretty strong" and that they were not able to get his arms behind his back. Khat continued to resist, and all three of them fell to the ground. The officers struggled with Khat for about 30 seconds before getting him handcuffed. The officers told Khat he was under arrest at some point between when they walked Khat to the police car and he began to tense up and when they succeeded in handcuffing him. Bailey testified that Khat was being arrested for "[o]bstruction at that point."

After Khat's arrest, the officers searched him and found a black and purple "Ruger LC9" handgun in his pocket. Maguire testified that this was not the same item that he thought was a knife. Maguire testified that they did not locate a knife in searching Khat and that he had no idea what the item was that he initially thought was a knife. Because they had smelled marijuana at the start of the traffic stop, the officers also searched Khat's vehicle and found a clear jar containing "some flakes" of a green leafy substance that smelled like marijuana and a digital scale.

The county court entered an order overruling Khat's motion to suppress. The court first concluded that the officers had probable cause for a traffic stop of Khat's vehicle. The court stated that both the loud muffler noise heard by the officers and the white light visible to the rear of Khat's vehicle provided probable cause for the stop. Next, the court concluded that once Khat's vehicle was stopped, the smell of marijuana provided a valid basis for the officers to detain Khat and ask him to exit the vehicle. The court determined that Khat's continuing to place his hands into his pockets despite several commands not to do so, coupled with his efforts to gain entrance to his vehicle, provided sufficient probable cause to arrest him for obstructing a peace officer. The court concluded that the subsequent search of Khat's person and his vehicle were legitimate searches incident to his arrest.

A jury trial was held, and Khat timely renewed his motion to suppress, which the county court again denied. The State presented testimony from Maguire and Bailey, and their testimony was largely consistent with their testimony at the suppression hearing, although they testified to a few additional points which we set forth below. The State also offered and the court received into evidence the police cruiser video recording and the gun retrieved from the search of Khat. The video was played for the jury. Maguire and Bailey testified that as they were trying to handcuff Khat, they used "knee strikes" on him because of his resistance. After they fell to the ground, Maguire started delivering "closed-hand strikes with his fist and elbow" to subdue Khat, who continued to resist until the officers finally handcuffed him. Maguire estimated that the entire altercation, from the time the officers first tried to handcuff Khat until they succeeded in handcuffing him on the ground and he was again "brought back in front of the camera," lasted about 60 seconds. Maguire filled out a use-of-force report following the incident. Maguire and Bailey also testified about the gun found in Khat's pocket, confirming that it was a "Ruger LC9"

"9-millimeter" handgun with four rounds in the magazine. Both officers confirmed that the gun was not visible until it had been removed from Khat's pocket.

The jury found Khat guilty of resisting arrest, obstructing a police officer, and carrying a concealed weapon. The county court accepted the jury's verdict, and it subsequently sentenced Khat to 6 months of probation for all three offenses.

Khat filed a notice of appeal, notifying the county court of his intent to appeal his convictions to the district court. In his statement of errors in the district court, he alleged that the county court erred by overruling his motion to suppress. He also alleged that the evidence was insufficient to support his convictions and that the county court imposed an excessive sentence. At the hearing on Khat's appeal, the district court received into evidence a copy of the bill of exceptions from the county court, which included both the suppression hearing and jury trial and the exhibits received at those hearings.

On December 29, 2017, the district court entered an order and opinion, affirming the judgment imposed by the county court. After reviewing the bill of exceptions from the county court, the district court determined that the county court did not err in overruling Khat's motion to suppress. The district court reviewed the county court's finding that law enforcement had probable cause to effectuate the traffic stop of Khat's vehicle due to both the loud muffler and the improper display of the white light at the rear of the vehicle. The district court further noted that once the vehicle was stopped, law enforcement smelled the odor of marijuana, which served as probable cause to detain Khat and ask him to exit the vehicle. The district court then determined, based on Khat's actions in continuing to place his hands in his pockets despite being commanded to stop coupled with his efforts to gain entrance to his vehicle, that there was sufficient probable cause to arrest him for obstructing a peace officer. Finally, the district court determined that the subsequent search of Khat's person and vehicle were legitimate searches incident to arrest. The district court also found the evidence sufficient to support Khat's convictions and rejected his argument with respect to sentencing after finding that the sentence imposed was within the statutory limits.

## ASSIGNMENTS OF ERROR

Khat asserts, consolidated and restated, that the district court erred in (1) affirming the county court's ruling on his motion to suppress because it never engaged in a de novo review of the lower court proceedings and (2) finding the evidence sufficient to affirm each of his convictions.

## STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Hatfield*, 300 Neb. 152, 912 N.W.2d 731 (2018). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Petsch*,

300 Neb. 401, 914 N.W.2d 448 (2018). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Petsch, supra.*

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Pester*, 294 Neb. 995, 885 N.W.2d 713 (2016). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

ANALYSIS

*Motion to Suppress.*

Khat asserts that the district court erred in affirming the county court's ruling on his motion to suppress because it never engaged in a de novo review of the lower court proceedings. He claims that this court should reverse and remand the matter back to the district court with instructions to apply the proper standard of review.

Khat argues that the district court applied the wrong standard of review in reviewing the county court's ruling on his motion to suppress because, in its order, the district court recited the generic standard of review for appeals from a county court to a district court. See *State v. Hatfield, supra* (in appeal of criminal case from county court, district court acts as intermediate court of appeals, and its review is limited to examination of record for error or abuse of discretion). The district court's recitation of this proposition was a correct statement of the law and was appropriate given that it was reviewing multiple assigned errors and not just Khat's Fourth Amendment claim. As we set forth above, an appellate court applies a two-part standard of review when reviewing a trial court's ruling on a motion to suppress. See *State v. Petsch, supra*. Despite not specifically reciting this standard of review, there is nothing in the district court's order to indicate that it did not apply the correct standard in reviewing the county court's ruling on Khat's motion to suppress. The district court reviewed the county court's findings with respect to probable cause to stop Khat, probable cause to detain him, and probable cause to arrest him. The district court also reviewed the county court's finding that the subsequent search of Khat's person and vehicle were legitimate searches incident to arrest. The district court then concluded that the county court did not err in overruling the suppression motion.

Khat's assertions with respect to the district court's review are without merit. While Khat's assigned error and argument focus primarily on the district court's alleged failure to apply the proper standard of review, we have nevertheless applied the relevant two-part standard in our own review of the county court's ruling and find no error in that regard. Khat complains that neither the county court nor the district court specifically referenced the police cruiser video in their respective orders. The district court order reflects that the court reviewed the bill of exceptions, which included the video recording. Upon our own review of the testimony and the video recording, we conclude that the county court's factual findings about the stop, Khat's action in reaching for his pockets, the ensuing struggle, Khat's arrest, and the search of his pockets are

supported by the record. We conclude, independently, that there was no Fourth Amendment violation and the motion to suppress was properly overruled.

*Resisting Arrest.*

Khat was convicted of resisting arrest in violation of § 28-904(1), which provides:

A person commits the offense of resisting arrest if, while intentionally preventing or attempting to prevent a peace officer, acting under color of his or her official authority, from effecting an arrest of the actor or another, he or she:

(a) Uses or threatens to use physical force or violence against the peace officer or another; or

(b) Uses any other means which creates a substantial risk of causing physical injury to the peace officer or another; or

(c) Employs means requiring substantial force to overcome resistance to effecting the arrest.

An arrest is taking custody of another person for the purpose of holding or detaining him or her to answer a criminal charge, and to effect an arrest, there must be actual or constructive seizure or detention of the person arrested. *State v. Heath*, 21 Neb. App. 141, 838 N.W.2d 4 (2013). See, also, *State v. Armagost*, 291 Neb. 117, 864 N.W.2d 417 (2015).

Khat argues that the evidence was not sufficient to convict him of resisting arrest because he did not use or threaten physical force or violence or any means of creating a substantial risk of injury to the officers, such as pulling a knife or gun from his pocket. However, the evidence shows that Khat resisted and attempted to return to his car when the officers tried to handcuff him. After being told he was under arrest, he continued to struggle and resist, which required the officers to use their knees to control him. Khat and the officers fell to the ground during the struggle as the officers were attempting to handcuff Khat. The evidence was sufficient to show that Khat resisted arrest. See *State v. Campbell*, 260 Neb. 1021, 620 N.W.2d 750 (2001) (evidence sufficient to support conviction for resisting arrest where defendant resisted handcuffing and struggled with officers after being informed she was under arrest).

Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. See *State v. Pester*, 294 Neb. 995, 885 N.W.2d 713 (2016). Accordingly, the district court did not err when it determined that there was sufficient evidence to support Khat's conviction for resisting arrest.

*Obstructing Police Officer.*

Khat was convicted of obstructing a police officer, pursuant to § 28-906(1), which provides:

A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders (a) the enforcement of the penal law or the preservation of the peace by a peace officer or judge acting under color of his or her official authority or (b) a police animal assisting a peace officer acting pursuant to the peace officer's official authority.

There must be some sort of affirmative physical act, or threat thereof, for the offense of obstructing a peace officer to occur. *State v. Ellingson*, 13 Neb. App. 931, 703 N.W.2d 273 (2005). Evidence showing that a defendant resisted handcuffing, struggled with an officer, and continued to resist restraint are alone sufficient to sustain a conviction for obstructing a peace officer. *State v. Campbell, supra*.

Khat argues that his actions were not sufficient physical acts to constitute a violation of § 28-906. In support of his argument, Khat focuses on the language used by both the county court and the district court in reviewing his motion to suppress. Both courts stated that Khat's continued efforts to place his hands in his pockets despite commands not to do so, coupled with his efforts to gain entrance to his vehicle, provided sufficient probable cause to arrest him for obstructing a peace officer. The issue here is not the officer's arrest of Khat, but whether his actions amounted to obstruction of a peace officer. The evidence at trial shows that Khat was asked to step out of his vehicle so that the officers could investigate the odor of marijuana first smelled by Maguire. The evidence then shows that Khat resisted handcuffing, struggled with the officers, and continued to resist restraint. Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found the essential elements of the crime of obstructing a police officer beyond a reasonable doubt. See *State v. Pester, supra*.

Khat also argues that the evidence was insufficient on this charge because he did not obstruct the enforcement of a "penal law" or "preservation of the peace." He focuses on the fact that some of the charges the officers were investigating were infractions and argues that an infraction does not constitute a "penal law" for purposes of § 28-906. We disagree. "The terms offense and crime are synonymous as used in [Nebraska statutes] and mean a violation of, or conduct defined by, any statute for which a fine, imprisonment, or death may be imposed." Neb. Rev. Stat. § 28-104 (Reissue 2016). The Nebraska Supreme Court has held that a traffic infraction is a criminal offense and that the prosecution of such action is a criminal proceeding. See, *State v. Karel*, 204 Neb. 573, 284 N.W.2d 12 (1979); *State v. Huffman*, 202 Neb. 434, 275 N.W.2d 838 (1979); *State v. Knoles*, 199 Neb. 211, 256 N.W.2d 873 (1977). We note that "preservation of the peace," as used in § 28-906(1), means maintaining the tranquility enjoyed by members of a community where good order reigns. *State v. Ellingson, supra*. However, because the evidence is sufficient to show that Khat obstructed the enforcement of a penal law, i.e., the officer's investigation of his traffic infractions, the odor of marijuana and marijuana visible in his glove box, their attempts to restrain and place him under arrest, we need not address whether he also obstructed the "preservation of the peace."

We conclude that the district court did not err when it determined that there was sufficient evidence to support Khat's conviction for obstructing a police officer.

*Carrying Concealed Weapon.*

Khat was convicted of carrying a concealed weapon, pursuant to § 28-1202(1)(a), which provides that "[e]xcept as otherwise provided in this section, any person who carries a weapon or weapons concealed on or about his or her person, such as a handgun, a knife, brass or iron knuckles, or any other deadly weapon, commits the offense of carrying a concealed weapon." "[H]andgun" is defined in Neb. Rev. Stat. § 28-1201(3) (Reissue 2016) to mean "any firearm with a barrel less than sixteen inches in length or any firearm designed to be held and fired by the use of a single

hand." "Firearm" is defined as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or frame or receiver of any such weapon." § 28-1201(1). The Nebraska Supreme Court has determined that a weapon is "concealed" when it is "hidden from ordinary observation." *State v. Senn*, 295 Neb. 315, 321, 888 N.W.2d 716, 720 (2016).

In this case, both police officers testified that the handgun (received in evidence) found in Khat's pocket after he was arrested was not visible during their initial interaction with him. Maguire testified that they found a purple "Ruger LC9" handgun on Khat's person when he was searched after being handcuffed. Bailey, who performed the search of Khat's pockets, discovered the purple Ruger "9-millimeter" pistol and confirmed that it was not visible before he removed it from Khat's pocket. Bailey did indicate that he had some trouble "getting the gun slide to come back" and that he did not think the gun had been taken care of properly, so "it wasn't moving as easy as it should have." Another officer who was on the scene, however, looked at it and "was able to get the slide to . . . come back."

Khat first argues the evidence was insufficient to convict him of carrying a concealed weapon because the pistol was not shown to be a functioning weapon. In support of this argument, Khat notes several cases, including *State v. Lee*, 195 Neb. 348, 237 N.W.2d 880 (1976). In that case, the defendant was convicted of unlawful possession of a firearm by a felon. At trial, the evidence showed that he possessed "a 22-caliber revolver with a 4¾-inch barrel." *Id.* at 349, 237 N.W.2d at 882. On appeal, he argued that the State was required to prove not only that the object he possessed was a firearm, but also that it was operable. The Nebraska Supreme Court rejected the approach taken by some courts which have held that evidence of a defective or inoperable condition of a firearm was an affirmative defense. Instead, the Court held that evidence of possession of a revolver or gun of prohibited description, which is in apparently good condition and has the characteristics and appearance commonly understood to be those of the firearm it purports to be, is prima facie evidence sufficient to go to the jury in a prosecution for possession of a firearm by a felon. See *State v. Lee, supra*.

Next, Khat notes *In re Interest of Cory P.*, 7 Neb. App. 397, 584 N.W.2d 820 (1998). In that case, a juvenile was adjudicated on the basis of charges including carrying a concealed weapon in violation of § 28-1202. On appeal, he argued that the State failed to prove beyond a reasonable doubt that the item in question was a firearm because the record did not show that it was operational. This court applied the rule from *State v. Lee, supra*, and stated that "the sole question remaining is whether the State presented sufficient evidence that the gun in the instant case was of prohibited description, was in apparently good condition, and possessed the characteristics and appearance commonly understood to be those of the firearm it purported to be." *In re Interest of Cory P.*, 7 Neb. App. at 402, 584 N.W.2d at 824. The evidence showed that the item recovered from the glove box in that case was a handgun of a particular model, appearing to have the characteristics and appearance of a handgun, and nothing in the record suggested that it was inoperable or not in good condition. Accordingly, this court concluded that the evidence was sufficient to support the juvenile's adjudication for the offense of carrying a concealed weapon.

Finally, Khat notes *State v. Clark*, 10 Neb. App. 758, 637 N.W.2d 671 (2002). In that case, the defendant challenged the sufficiency of the evidence to support his conviction for use of a deadly weapon during the commission of a felony, asserting that he could not be convicted of that

charge because the gun was not proved to be operable. This court examined case law from other jurisdictions as well as § 28-1201 and concluded that the Nebraska statute defining a firearm "fits in the category of cases where the Legislature would have included operability if that is what was intended," and we agreed "that it would be irrational to allow a person committing a felony to use a nonoperational gun, but which was in fact designed to expel a projectile." *State v. Clark*, 10 Neb. App. at 765, 637 N.W.2d at 677. This court determined that it is irrelevant whether or not a gun is operable to convict a person of using a deadly weapon during the commission of a felony. *State v. Clark, supra*. The evidence showed the weapon in that case was a particular caliber semiautomatic pistol with a matching magazine and was thus a weapon designed to expel a projectile. We found the evidence sufficient in that case to support the defendant's conviction.

Khat argues that this court's decisions in *State v. Clark* and *In re Interest of Cory P.* "are in conflict with each other" as to whether a firearm must be operable. Brief for appellant at 15. We disagree. The courts in all three of the cases referenced by Khat rejected arguments that the State was required to show that a weapon was operable to fit under the definitions of "firearm" and "handgun" set forth in § 28-1201. In this case, the evidence shows that the weapon recovered from Khat's pocket, a Ruger 9-millimeter handgun with a magazine including four rounds, was one "designed" to expel a projectile. It had the characteristics and appearance commonly understood to be those of the firearm, and although Bailey had some difficulty maneuvering the slide on the gun, another officer was able to get it to "come back." Khat's argument that the handgun recovered from his pocket did not fit the statutory definitions is without merit.

Khat also claims the evidence was insufficient on this charge because the gun was not concealed. In support of this argument, he points to the evidence that Maguire initially thought he saw a knife clip. Khat's argument ignores Maguire's testimony that what he thought was a knife was not the same object as the gun recovered from Khat's pocket. Both Maguire and Bailey testified that the gun was not visible until it was removed from Khat's pocket. Khat's argument that the weapon was not concealed is without merit.

Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found the essential elements of the crime of carrying a concealed weapon beyond a reasonable doubt. See *State v. Pester*, 294 Neb. 995, 885 N.W.2d 713 (2016). Accordingly, the district court did not err when it determined that there was sufficient evidence to support Khat's conviction for carrying a concealed weapon.

CONCLUSION

We conclude that the county court did not err when it overruled Khat's motion to suppress and that therefore the district court did not err when it affirmed the ruling. We further conclude that the district court did not err when it determined that there was sufficient evidence to support Khat's convictions. Accordingly, we affirm the district court's order.

AFFIRMED.